*239 Opinion of the Court,
by Judge Owsley.
THIS is an appeal from a judgment recovered by Hoy in an action of detinue, which was brought against him by M’Gowen, to recover a negro girl named Rachel.
The right to the girl is asserted by each party, through John Hardwick, to whom she once belonged.
M’Gowen claims by purchase from Maples wick, who previously purchased the girl at a sale made *240 by a constable, to satisfy an execution which issued from a magistrate against the estate of John Hardwick, by whom she was delivered to the constable to be sold for that purpose.
The ruléis different as to void as to creditors and purchasers if it is not recorded withfromTts'date ’
An unrecorded mortgage estate,S°can have no legal effect in a ^subsequent purchaser, even with tic8'
The act of this rule^afeS relates to re al estate. ftoaST*8 within time, with the oot?* it°isre" sufficient. A court of equiti,]nay. relief in favor of an honest bon^ fide nmrrn-hirBC mortgagee of personal property, holding un™rr®' gage, against subsequent notice
*240 Hoy Haims under a mortgage executed to him by John Hardwick before the date of the execution and sale by the constable. When the mortgage was given, ^ie was not born, but she is the child of one of the Women therein named. The is as follows:
“ Know all men by these presents, that I, John Hardvvick, of Montgomery county and State of Kentucky, have this day bargained and sold unto Thomas Hoy, ten negroes named as follows: George, John, Braze, Violet, Clary, Patsey, Mariah, Hannah, Amy and' littl° George; which negroes I warrant from me and all other persons, to said Hoy and his heirs forever; but may be discharged with the payment of nine hundred and fifty dollars; otherwise the above contract to stand as above stated. As witness my hand this 20th of May, 1808. J. Haedwick, (Seal,)”
Various opinions were given by the circuit court the of the trial there,
1st' That court refused to instruct the jury, that the plaintiff’s right was not affected by the mortgage to Hoy, if they believed from the evidence, that the possess^011 °f the mother,of Rachel did not accompany the mortgage, and that Maples Hardwick purchased her at the constable’s sale, by the consent of his father, John Hardwick, and that the plaintiff purchased of Maples!
2nd. The court refused to instruct the jury, that if they believed that Maples Hardwick purchased the gjr] Rachel at the constable’s sale by the consent of his father, and made a bill of sale for her to' the plaintiff, that the mortgage to Hoy cannot defeat the plain-right, unless Hoy took and kept possession of the under the
3rd. The court instructed the jury that they must f°r the defendant, if they believed from the evidence, that at the time the bill of sale was executed by IfMaples Hardwick to the plaintiff, the defendant was in the possession of the girl, claiming title adverse to Ma-pies Hardwick.
4th. The court instructed the jury that a mortgage, though not recorded, will authorise the mortgagee to hold property against all persons claiming under the *241 •mortgager, except bona' fide creditors and subsequent ■purchasers not having notice of the mortgage, and that where the rights of third persons are concerned, it is ne■cessary for the creditor to shew a judgment as well as execution, and that to constitute a purchaser, the title ■must be completely vested upon a fair and good consideration paid.
To be a purchaser with-t™|an’ law, he must the leK sary that the consideration should be actually paid; a„reecl to be paid, it is sufficient,
¡ideratíonaotually paid, purchaser “^by^ioTice 0f a prior latent equity, ¿>e - a court 0f’ chancery, to his notwithstanhe may hn<i no' as°he receives conveyance the he is, in eon-law^a^ur °f chaser,^and may,in a pro-l°awdinfoteot Wmse?f°tho5 the consideration be not actúa y pai
*241 5th. The court instructed the jury, that to authorise . . __ _ h..*'. - . Maples Hardwick, or any other claiming under him, to _ recover upon Maples’ purchase under the execution against John Hardwick, it was necessary to shew the judgment upon which the execution issued, if Hoy, against whom the action is brought, derived title by purchase or mortgage from John Hardwick, before Ma-pies Hardwick made his purchase; but there might be a recovery without shewing the judgment, if the jury believed that Maples Hardwick was a fair purchaser from John Hardwick for a valuable consideration.
Under these instructions and decisions, the jury upon the evidence introduced by the parties, found a verdict for the defendant, and after the plaintiff’s motion for new trial was overruled, the judgment appealed was rendered by the court.
The main questions for the determination of •this court, involve the correctness of the several opinions expressed by the court below in refusing as well as in giving instructions to the jury. f
But before we enter on-the examination of those ques-tions, it may not be improper to premise that the plaintiff has not presented himself in a situation to attack the validity of the mortgage under which the .defendant claims, on the score of its 'being fraudulent as to creditors of John Hardwick, by .whom it was executed, It is true, the plaintiff appears to have purchased the girl from Maples Hardwick, who is proved to have previously purchased her at a sale made by an officer of the law, under an execution against the' estate of John Hard-wick; and under these circumstances, the plaintiff ought perhaps to be allowed to oppose the validity of the 'mortgage, by drawing to his aid tlie condition of the person in whose favor the execution issued. But ting the plaintiff may do so, it does not thence follow, that his situation permits him to’assail the mortgage on the ground of its being fraudulent as to the creditors x»f John Hardwick; for the present suit is against Hoy, *242 who was no party to the execution, and it is a settled rule, both at law and in equity, that before the rights of strangers can be affected by an execution, the judgment upon which it issued, must be produced, and in case there Is no evidence of the
But in attempting to maintain the right of Maples Hardwick to the girl, the plaintiff has not rested exclusive]y l1Pon ^e authority , which the execution against the estate of John Hardwick gave to the constable to sell. Evidence was introduced conducing to prove that the girl was delivered to the constable by John fjar(jwjc][j;} fog so]c] †0 satisfy the execution, and that at his request and by his directions, she was in fact sold to Maples Hardwick. Under this purchase so made, Maples Hardwick must, therefore, be admitted to have derived as perfect a right to the girl as if he had purchased directly from John Hardwick. Such would be the nature of the right of Maples Hardwick, were the execution admitted not in itself to have conferred upon the constable competent authority to take and sell the girl. Though such were the case, the authority of the constable to sell, would exist in another source; it would exist in the power which was given to him by John Hardwick upon his delivering the girl to be sold by the constable.
It was the right so derived by Maples Hardwick, that was afterwards sold by him to the plaintiff, and it was the same right, we suppose, that was alluded to by the plaintiff in his application to the circuit court for the instructions which were first refused.
With these remarks we will proceed to examine the questions growing out of the decisions of the court in giving and withholding the instructions.
The first and second refusal of the court to instruct the jury, may with propriety be considered together. In each of those applications, the object of the plaintiff appears to be the same, and though differently expressed, there is no substantial difference as to the principle involved in each refusal. Both applications appear to have been predicated upon the idea, that as respects the rights of subsequent purchasers from John Hard-wick, the prior mortgage to Hoy is, in judgment of law, inoperative, in consequence of the possession of the slaves mentioned in the mortgage, not having accompanied the mortgage.
*243 If, instead of being a mortgage, the deed imported an obsolute sale of the slaves to Hoy, the position assumed by the plaintiff in his applications, would no doubt be correct. A bill of sale, absolute upon its face, made by a person who still continues in possession of the property, has more than once been held by this court to be, per se, fraudulent as to the creditors and subsequent purchasers of the person possessed. The fact of possession not accompanying such a bill of sale, under the statute of this country, taken from those of Elizabeth in England, is considered conclusive evidence of a fraudulent intent, and as to creditors and purchasers, the bill of sale is, in judgment of law, fraudulent and void.
But we are not aware of any decision under the statute of this country or those of England, which has given to the continuance of possession by a mortgager, the same conclusive and vitiating effect upon the mortgage. There is evidently an essential difference between the effect of a possession retained by the maker of an absolute bill of sale, and the possession retained by the maker of a mortgage. The object of the one is to pass the absolute right of property, and the object of the other, is to give a security defeasible upon a particular contingency. The possession in the former case, is utterly incompatible with the deed; whereas, in the latter case, there exists no such incompatibility. Whilst, therefore, the possession in the former case may be correctly said to form conclusive and intraversable evidence of fraudulent intent, and render the deed, per se, fraudulent, such cannot be admitted to be the effect of the possession in the latter case.
We know, cases may be found, where, owing to the delusive credit held out to the world by mortgagers being allowed to remain in the possession of goods mortgaged, courts have inferred a fraudulent intent, and pronounced the mortgages void as to creditors and purchasers under the statute. But every case of that sort to whieh we have had access, appears to have been decided under circumstances which made it incumbent upon the court to decide the fact as well as the law; and in no one case has the circumstance of the possession continuing with the mortgager, been held to be conclusive or intraversable evidence of fraudulent intent. The utmost extent to which the authority of the decisions in *244 those eases can be carried, is to shew that the tribunal whose province it is to decide fact, may infer a fraudulent intent from the fact of possession remaining with the mortgager. But the inference is an inference of fact, Which must be made by the triers of the fact, and which may be dispelled by the proof of other facts. Until the intent is found to be fraudulent by the triers of the fact, though possession may have remained with the mortgager, in judgment of law, the mortgage cannot be said to be fraudulent.
Thus, in the case of Slone vs. Grubham, 2 Bulst. 225, it was said by Coke, Chief Justice, that if an absolute conveyance be made, and the possession of the thing conveyed, be retained by the party conveying, the transaction has the face of fraud; but if the interest do not pass absolutely, but upon a future condition, continuance in possession shall not, in judgment of law, be said to be fraudulent. See this case cited and referred to in Rob. on Fra. Con. 559. And in the case of Miggot vs. Mills, 1 Lord Ray, 286, a mortgage was sustained by the court, although the possession of the goods mortgaged, continued in the mortgager. In that case, a tenant having changed his trade, from that of a victualler to that of an inn-keeper, and having occasion for more furniture, borrowed money of his landlord, to buy goods to furnish his house, and for security of the money, made a sale of the goods to his landlord, but kept the possession of them. It was decided by Holt, Chief Justice, that although, if these goods had been assigned to any other creditor, the keeping possession of them had made the bill of sale fraudulent as to the other creditors; yet, since such was the original agreement, and that honestly and really made for securing the money of the landlord, which he had lent to the tenant for that purpose, the agreement was good and honest.
Other authorities of like import might be referred to; but these are sufficient to shew that the mere circumstance of possession not accompanying the mortgage, does not render the mortgage fraudulent, per se, and void as to creditors and purchasers.
But, though not in judgment of law fraudulent, a mortgage will be void as to creditors and subsequent purchasers, if not recorded in the manner required by law. It is expressly declared to be so by the act of Virginia assembly of 1748, 1 Dig. 304, in force in this *245 country at the date of the mortgage to the defendant. That act, among other things, declares that all deeds of trust and mortgages whatever, shall be void as. to all creditors and subsequent purchasers, unless they shall be acknowledged or proved, and recorded according to the directions of the act.
As, therefore, the mortgage which was executed by John Hardwick, appears never to have been regularly proved and recorded, it must be adjudged void as to the creditors and subsequent purchasers of John Hard-wick, and consequently the jury should have been instructed that the right of the plaintiff was not affected by the mortgage, if they should believe that Maples Hardwick, under whom he claims, was a purchaser at the constable’s sale, by the consent of the mortgager. ,
The instructions would no doubt have been correctly refused, if, as the court seems to have thought in another part of its instructions, the mortgage was good as to subsequent purchasers with notice, though not recorded.
But we apprehend, in strict propriety, the mortgage cannot be said to have any legal effect in a contest with subsequent purchasers with notice. The act makes no distinction as to purchasers with notice and such as are not so. The mortgage, if not recorded, is declared void in general terms, and it is incumbent upon the court to pronounce the sentence of the law as declared in the act. From analogy to the adjudications of the English courts under their statutes concerning the registration of certain deeds, it might possibly be competent for a -court of equity in favor of an honest bona fide mortgagee holding under an unrecorded mortgage, to grant relief against subsequent purchasers with notice. But whatever may be the rule upon that subject in equity, it is perfectly clear, that a mortgage not recorded according to the requisitions of the act, must, in a.proceeding at law, be adjudged inoperative and void as to creditors and subsequent purchasers. Sug. Tend. 471.
These observations are, however, intended to apply only to mortgages of other property than land. The act of assembly to which we have referred, is no doubt sufficiently comprehensive to embrace mortgages of every description of property; but so far as respects land, we understand the law to have undergone a change by the act of assembly of 1797. 1 L. K. 312.
*246 According to the most natural and obvious import of this latter act, all deeds of conveyance to which it alludes, will be good as to subsequent purchasers with notice, though not proved and lodged with the clerk of the proper office to be recorded within the time prescribed by its provisions, and in the case of the Bank of Kentucky vs. Haggin, (1 Marshall, 306,) the act was decided by this court to embrace deeds of mortgage. As respects the legal-effect of an unrecorded mortgage upon subsequent purchasers with notice, there is, therefore, an irreconcilable repugnance between the two acts, and of course the former act must yield and give way to the latter. It is, however, only as to conveyances of land, that-the latter act applies, and it is only as to mortgages of that description of property that the latter act has any effect upon the former.
It may be also proper to remark, that we do not admit, as seems to have been thought by the court below, that to be a purchaser within the meaning of the act, the consideration of the purchase must be actually paid. To come within the description of purchaser, the person must, according to the settled doctrine of the law, hold the legal title of the property;, but if he holds the title, it is totally immaterial whether it was made upon a consideration actually paid or only agreed to be paid. Before the consideration is actually paid, the. purchaser may no doubt be affected by notice of a prior latent equity, so. as to be compellable in a court of chancery to surrender his legal title to the equity-holder; but notwithstanding he may have had notice, so soon as he receives a conveyance of the title, he becomes, in contemplation of law, a purchaser, and, as such, may, in a proceeding at law, avail himself of the provisions of the law made to protect purchasers, though the consideration of his purchase be not actually paid.
There is one other point not already noticed, in relation to which, it is sufficient to refer to the decision of this court in the case of Thomas vs. Thomas' administrators, 2 Marshall, 430, as containing the true doctrine of the law upon the principle involved.
Upon the whole, it is the opinion of the court, that the court below erred in instructing the jury, that to constitute a purchaser, the consideration of the purchase must be actually paid, and in instructing the jury that an unrecorded mortgage of slaves, is good against sub *247 sequent purchasers with notice, and in refusing to instruct the jury that the mortgage to Hoy, (it not being regularly recorded.) could not affect the right of the plaintiff, if they should believe that Maples Hardwick, under whom he claims, was a purchaser from the constable, by the consent of the mortgager.
The judgment must consequently be reversed with costs, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.