STEWART & Co. but for the attachment of the debt due Edmund B. Barker,
*vs*
HALL *et al.* one of the sureties of the administrator, in the hands of
the sureties, then Martin & Cole, which if the complainant cannot reach,
of the estate de-
scended to the he may not be able to make his debt out of the adminis-
heirs, if necessa-
ry. trator, his sureties, or the heirs, by any of the forms which
the execution may be made to assume. But as the ad-
ministrator and the estate in his hands, if any, should be
first made liable, a decree should be rendered for the debt,
with direction that an execution be first issued against the
administrator, to be levied of the estate in his hands, if
any, if none, to be levied of his own estate, and the
cause should be suspended and the attachment retained
until a return shall be made, showing that the debt and
costs cannot be made out of the administrator, and then
if it shall not be made, a decree should be rendered
against Martin & Cole for the amount, and a credit for
the same allowed them, on the debt owing by them to
Edmund B. Barker, the surety.

---

CHANCERY.                · **Stewart & Co. *vs* Hall *et al.***

ERROR TO THE FAYETTE CIRCUIT.

*Case* 64.                    *Chancery  Attachments.*

October 24.    CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

THIS is a contest in Chancery, between "*Alexander*
The case stated. *Stewart & Co.*" as attaching creditors of "*Keeler, M'Neil*
*& Co.*" of New York, and James Hall and Thaddeus
Keeler, who claim the same fund (choses in action and
equities) by an assignment to trustees for their benefit, exe-
cuted by one Putnam, as attorney in fact, on the day be-
fore the issuing and levying of the attachment, but ante-
dated so as to purport to have been delivered three days
sooner than it was.

Keeler, M'Neil & Co. being creditors of J. Frazier, of
Lexington, for goods sold and advanced to him in a mer-

cantile concern, in the profits of which they also had some interest, and Frazier having failed, and made a general assignment for the benefit of his creditors, Putnam was sent to Kentucky, with power to secure the debt of his constituents (Keeler, M'Neil & Co.) and to assign the notes and credits to any of their creditors, if he should deem such a course proper. Having attached the fund assigned by Frazier, and apprehending, as he said, that Frazier would endeavor to defeat Keeler, M'Neil & Co. in some unkind mode or other, and knowing that counsel had written or was writing the attachment bill of the plaintiffs in error, Putnam consulted two lawyers, and the result was the assignment to them as trustees for Hall & Keeler, who were neither present, nor in any way privy to the act, but approved it within ten days, and as soon as they heard of it. The deed was acknowledged in the Clerk's Office on the day of its execution, and the clerk was directed to endorse the exact moment of the acknowledgment. The trustees have not denied, nor can there be any doubt of the fact, that this assignment was made and acknowledged, *at that particular time,* for the purpose of overreaching the impending attachment: but they deny that they were guilty of fraud, and Keeler, M'Neil & Co. as well as Hall & Keeler, all of whom insist on the validity of the assignment by Putnam, aver that so far as they know or believe, the transaction was untainted by bad faith, and was honestly intended for the purpose imported on its face.

The Circuit Court gave the preference to Hall & Keeler, and therefore dismissed the bill.

The assignment by Putnam is assailed in this Court, on the following grounds : *Grounds relied on for reversal.*

1. That the attachment having been levied before Hall & Keeler had given their express assent to the assignment, that levy created a prior lien on the equity, which as argued, resulted to Keeler, M'Neil & Co. until such assent by the *cestui que trusts.*

2. The non-registration of the power of attorney to Putnam.

STEWART & Co.
vs
HALL et al.

3. That the assignment was made without sufficient authority, except from two of the five members of the firm of Keeler, M'Neil & Co.

4. That it was fraudulent in fact.

These points will be severally considered in their numerical order.

1. When a beneficial assignment is made to trustees, to the use of an absent creditor, the presumption of law, as well as of fact, in the first instance, is that it was made with his assent, unless there be some cause to infer his non-acceptance. The deed being for a valuable consideration, operates fully from the delivery to the trustees for the beneficiary, unless the latter shall indicate his dissent or shall not, within reasonable time, receive any notice of the trust, or, after receiving such notice, should, by not acting or otherwise, afford cause for apprehending that the deed was merely colorable, and therefore fraudulent. The deed is neither imperfected, nor, in any respect, inoperative merely because it was made and delivered to the trustee in the absence and without the knowledge or express authority of the *cestui que trust*. But this fact may fortify others conducing to show a fraudulent intent.

2. If the acknowledgment of the deed for registration was necessary as against the creditors of Keeler, M'Neil, & Co. the power of attorney ought also to have been properly authenticated and deposited for record, with the assignment—because, without the power, the deed was not *record* notice that the property embraced in it had passed, or was legally incumbered by it.

And it may be that the statute of 1748, as well as those of 1820, and of 1837, required the registration of such a deed of trust. The fourth section of the Virginia act of 1748, (1 *Digest*, 430,) requires the recording of all marriage settlements of "either lands, slaves, *money*, or *other personal thing*," and also of "*all* deeds of trust and mortgages *whatsoever*." And in the case of *M'Gowan* vs *Hoy*, (5 *Litt*. 245,) this Court said this enactment "is no doubt sufficiently comprehensive to embrace mortgages of every discription of property," including, of course, as we suppose, the legal title to choses in action.

A beneficial assignment to trustees for the use of an absent creditor, is presumed in law and fact to be with his assent until the contrary appears.

Whenever it is necessary to record a mortgage or deed of trust, it is necessary to record a power of attorney, if it be made under a power.

And the registration acts of 1748 and 1820, seem to require the recording of mortgages or deeds of trust, either of *lands, slaves, money or other personal thing*—that of 1837, required mortgages of equitable interests to be recorded—*Argu.*

As the act requires the registration of marriage settlements of money or choses in action, it might be difficult to perceive a reason for excluding from the requisition as to the recording of all ordinary deeds of trust and mortgages whatsoever, such as embrace only bonds or other legal obligations for money. The statute of 1820, (1 *Digest*, 449,) curtailing the time prescribed for acknowledgments for registration, also applies to all mortgages or deeds of trust, "upon *any* real or *personal* estate," thus literally comprehending every article of property. And the act of 1837, (*Loughborough's Digest*, 143,) requires the recording of mortgages and deeds of trusts of equitable interests.

These enactments seem literally to embrace all mortgages of every kind of property, legal or equitable, and to exclude nothing which can be owned and mortgaged. But whether they were so intended, we need not, and indeed cannot now judicially determine, because the plaintiffs in error had notice, in fact, of the deed by Putnam, and such notice may operate availably in equity, even though the power of attorney was never deposited for registration with the deed.

3. The power to Putnam implied personal discretion as well as confidence, and could not be delegated without express authority; and that power was, in fact, given by only two of the five members of the firm of Keeler, M'-Neil, & Co. one of these two acting under the like power from three, which was of such a character as not to be delegated by the depository of it to any other person without express authority, which was not given. The power purporting to be given to Putnam by all five individually, was therefore, insufficient as to three of them; and consequently Putnam's deed passed only two-fifths of the fund assigned by him, and could not, by any subsequent recognition or ratification by those three persons, overreach the intermediate attachment lien.

A power not legally executed as to all the members of a firm, binds only such as to whom it has been legally executed.

4. And we are also strongly inclined to the conclusion, that the assignment should be deemed to have been made for the purpose of hindering and delaying the plaintiffs in error, as creditors of Keeler, M'Neil, & Co.

Circumstances inducing the conclusion that an assignment was fraudulent.

This conclusion is fortified by a letter addressed by

STEWART & Co.
*vs*
HALL *et al.*

Putnam to his constituents, immediately after the execution of the deed of trust; in which letter he manifested, as we think, a purpose to defeat the attachment and prevent Frazier from effectuating an imputed object of inciting creditors of Keeler, M'Neil, & Co. to attach their effects and debts in his hands. Our deduction from all the facts, too minute and various for analysis here, is that the deed not only would not have been made when it was, had not the plaintiffs in error been threatening to attach the property, but that it was, in fact, made to defeat their attachment, and not *bona fide,* to secure Hall and Keeler as preferred creditors. And we adopt this conclusion with less hesitation, because in such a contest between creditors, if there be reasonable doubt as to equitable priority, the creditor who has been most vigilant and voluntarily moved first, should not be postponed to others who had been passive, and through the instrumentality of strangers, acting without their knowledge, and not at their instance, had acquired a semblance of priority merely technical. The *technical priority* apparently resulting from Putnam's deed as to two-fifths of the trust fund, should prevail over the attachment, in the absence of any evidence of fraud. But in such a case, when the fairness of the transaction is at least very questionable, technicality ought, in our opinion, to yield to the first caption or levy, or other lien at the instance of a creditor himself. Any other doctrine would encourage and facilitate infinite evasions and frauds by failing debtors.

We have no doubt of the jurisdiction of the Circuit Court in this case. Although the bill does not explicitly alledge that Keeler, M'Neil, & Co. are either non-residents or absent from the State, it imports that they are both absent and non-residents, "merchants of New York," "citizens of New York," and other allegations of a similar import, taken altogether, imply clearly that they were in New York, and there domiciled; and the proof in the record is also conclusive of that fact.

Wherefore, the decree is reversed and the cause remanded, with instructions to render a decree for Stewart and Company, according to the foregoing opinion.

*Robinson & Johnson* for plaintiffs: *Shy* for defendants.