CHICAGO TITLE & TRUST COMPANY, AS RECEIVER, RESPONDENT, (BROWN BROS. & COMPANY ET AL., INTERVENORS AND APPELLANTS,) *v.* O'MARR ET AL., APPELLANTS.

[Submitted September 28, 1896. Decided November 9, 1896.]

CHATTEL MORTGAGE—*Statutes—Repeal—Vested rights.*—Section 5182 of the Political Code providing that the repeal of the old statutes should not "abridge, abolish or impair any vested right, nor should such repeal change the force and effect of any act done or judgment rendered," preserved rights founded upon past transactions, and

therefore the chattel mortgage law of the code of 1895 could not affect chattel mortgages given prior to its adoption so as to exchange their priorities as fixed by the former law.

SAME—*Delivery of possession—Priority.*—Where one holding a first mortgage upon a stock of merchandise enters into possession of the stock and conducts the business through an agent and thereafter the mortgagor executes other mortgages upon the same stock, and the agent for the senior mortgagee consents to act and does act as agent for the junior mortgagees also, the possession of the agent then becomes the joint possession of all the mortgagees, in which case the purchase of the senior mortgage by one holding the last mortgage, with knowledge that the agent was holding under all the preceding mortgages, and the substitution of his own agent, to whom possession was surrendered, does not operate to subordinate the intermediate mortgages to the lien of the last mortgage.

SAME—*Defective affidavit—Possession by mortgagee.*—The invalidity of a chattel mortgage as against third parties, arising from a defective affidavit, is cured by the mortgagee taking actual possession of the mortgaged goods before the acquisition of rights by such third parties. (*Leopold* v. *Silverman,* 7 Mont 266, cited; *Marcum* v. *Coleman,* 10 Mont. 73; *Milburn Manufacturing Co.* v. *Johnson,* 9 Mont. 542, distinguished.)

SAME—*Description—Sufficiency.*—A description of mortgaged property as "the freighting outfit of B. F. & P. consisting of sixteen head of horses, all freight wagons and harness, being same property described in mortgage given to First National Bank of Neihart, Montana, and bearing same description. This mortgage subject to the mortgage of First National Bank aforesaid for $1,500; kept in Neihart and on road freighting; more particularly described as follows,"—is sufficient not only as between the parties to the mortgage but as to third parties as well, without a more specific description being added after the words "as follows."

SAME—*Adding particular description after execution.*—The insertion in a chattel mortgage of a more particular description of the property, made by the mortgagee's attorney after the mortgage had been executed and acknowledged by the mortgagors, but with their express consent, does not render the mortgage void as against third parties where no rights intervened, and the description as given at the time of execution of the mortgage was sufficient without further particularization. ·

SAME—*Attachment by mortgagee—Effect on mortgage lien.*—A creditor whose debt is secured by a mortgage has no right to proceed against his debtor's property by attachment until his mortgage security has been exhausted by foreclosure, but the fact that an attachment is issued under such circumstances does not operate as a waiver of the mortgage lien in the absence of facts creating an estoppel. (*Largey* v. *Chapman, ante,* page 563, cited.)

SAME—*Attachment and sale under execution by mortgagee—Conversion.*—Where a creditor holding a chattel mortgage upon a stock of merchandise, upon which there is a prior mortgage and also several mortgages subsequent to his, deposits the amount of the prior mortgage with the county treasurer as permitted by statute, and, disregarding the subsequent mortgages which were valid liens, attaches the property and sells it under execution, he and the sheriff are trespassers and liable to the subsequent mortgagees for the value of the property so converted in excess of the amount of his own mortgage.

REHEARING—*Conversion—Value of property.*—A motion for rehearing in such case made upon the ground that the value of the property sold under the defendant's execution was stipulated on the trial to be $12,500. and for that reason a new trial for the purpose of determining the value of the property converted was unnecessary, will be denied where it appeared from the record that the court struck out the defendant's allegations raising an issue as to the value, rendering proof upon that point immaterial, and it seemed that the stipulation was made for the purpose of the trial as the court viewed the issues to be tried.

*Appeal from Ninth Judicial District, Meagher County.*

ACTION for conversion.   The cause was tried before HENRY,

J., without a jury.    Judgment was rendered for the plaintiff below.    Reversed.

Statement of the case by the justice delivering the opinion.

This action grows out of the alleged conversion by the defendants of chattels mortgaged to the plaintiff and the intervenors.    Burchard & Pierse, merchants at Neihart, becoming involved, on July 3d 1893, executed a chattel mortgage to one Atkinson to secure a note for $4,100.    Atkinson took instant possession under the mortgage, placing one Harrison in charge as his agent.    On July 12th, thereafter, the firm executed and delivered their chattel mortgages to other creditors in the following order, and to secure the following sums, to-wit: Defendant Finch, Van Slyke, Young & Co., $1,970; Lindeke, Werner & Schurmeier, $145.14; Foot, Schultz & Co., $485; McKibbin & Co., $412.41; Brown Bros., $1,684.50.    These mortgages were filed on July 12th, 1893.    The affidavits to these latter mortgages were made by Harrrison, as agent for the mortgagees but are admitted not to be in proper form.    Thereafter on July 12th, 1893, Burchard & Pierse gave another mortgage on the same property already mortgaged and certain other property, to plaintiff to secure eight notes for $4,292.23, which mortgage was verified and filed for record on July 13th, 1893.    This mortgage also provided that the mortgagee might remain in possession, and contained a clause making it subordinate to the mortgages heretofore referred to, or any of them, provided ''in case they, or any of them, were duly executed, dated and recorded prior to the date, execution and recording'' of the mortgage to plaintiff.    On July 31st, thereafter, the Atkinson mortgage was transferred and assigned to plaintiff and Atkinson gave to plaintiff an order requiring Harrison, his agent, to surrender possession to plaintiff's attorney.    Under this order plaintiff placed one Beech in charge of the stock.

On August 5th, thereafter, the defendants Finch, Van Slyke, Young & Co. brought an action against Burchard & Pierse for the amount of their debt, procured a writ of attach-

ment, seized all of the mortgaged property and thereafter sold the same under execution for the sum of $5,372.75. On August 28th, Finch, Van Slyke, Young & Co. deposited with the county treasurer the sum of $3,100, to pay off the balance due on the Atkinson mortgage, which sum was afterwards received by the plaintiff on said account.

On August 14th, the plaintiff brought this suit against Finch, Van Slyke, Young & Co. and the sheriff to recover the amount due on the Atkinson mortgage and also the amount due on its own. The other creditors intervened and claimed a joint possession with plaintiff through Harrison, agent, and a joint right to share in the recovery. After this suit was begun plaintiff took the $3,100 on deposit, as the balance due on the Atkinson mortgage. The intervenors in their complaint asked that plaintiff recover judgment against defendants for the balance due upon the first note and mortgage after the credit of $3,100, and for judgment against defendants for the amounts due on their notes and mortgages at the time of the conversion, and that the plaintiff take nothing until after the payment of said amounts due intervenors.

The cause was tried to the court and judgment rendered in favor of plaintiff and against the defendants in the sum of $4,910.67, the amount asked by plaintiff under its second mortgage, and that the intervenors take nothing as against plaintiff and that the intervenors take nothing as against defendants.

Defendants appeal from the judgment against them in favor of plaintiff and from the order of the lower court overruling the defendants' motion for a new trial.

The intervenors appeal from the judgment against them and in favor of defendants and from the judgment against them and in favor of plaintiff.

On the trial R. W. Berry, a witness for plaintiff, testified substantially as follows: In July and August, 1893, I was agent and attorney of plaintiff and as such went to Neihart to get security on a stock of goods from Burchard & Pierse. The result of my visit was that I secured on July 12th, 1893,

a chattel mortgage of that date; I had an arrangement with them concerning the delivery of this mortgage; I accepted it for plaintiff conditionally, that is, with a writing wherein it was agreed between Burchard & Pierse and myself, as attorney for plaintiff, that the chattel mortgage given by Burchard & Pierse to the plaintiff should be considered absolute at the option of myself, as agent, on the advice of said plaintiff. (The mortgage was to be absolute unless surrendered by Berry in exercise of the option.) I found that Burchard & Pierse had given a chattel mortgage to F. P. Atkinson, of Great Falls, for $4,100, and had also placed an agent, Harrison, in charge. They claimed also that they had given other mortgages aggregating about $4,000 to various parties, Finch, Van Slyke, Young & Co., Brown Bros. and others mentioned in the original mortgage. I asked them if they had copies. They said "No." After some further conversation they agreed to give a mortgage to secure this claim of $3,148 and $1,143, provided plaintiff would accept this mortgage as subject to the previous ones. I objected. They would make no other arrangement and I finally agreed to accept the mortgages, and that we would insert a clause providing "we would come in subject to those mortgages, or all of them, in case they were properly made out, executed, dated and recorded prior to ours, or in case any one of said mortgages was properly made out, why, we would come in subject to that; but we wanted to reserve our right to contest those mortgages if we saw fit." Burchard & Pierse said the mortgages were all right so far as they knew. I told them, not being able to see the mortgages, I simply wanted to reserve rights. Burchard demurred and I told him: "In case those other mortgages are all right we come in subject to them, * * * and in case they are not, we simply reserve our legal right. * * * If we can get in ahead of all of them, we want to do that, and if not, and if we can get in before a part of them, then that is all right." It was under those conditions that this provision was included. After this talk I drew up the mortgage conditionally, as said. Meantime I

told them we ought to have additional security, as in case these mortgages were good we would come in at the tail end of about $8,000; and they objected, but finally said they owned a two-thirds interest in a freighting outfit, mortgaged to the First National Bank. Pierse, for the firm, agreed to include that property in this mortgage. Having no description of the property, the mortgagors told me that I could put this property in the mortgage as the same property described as mortgaged to the First National Bank, "with the privilege that I could consult the First National Bank mortgage and then add a specific description of that property to the mortgage." The mortgage had been written down to the words "bearing same description" while in Neihart. When I got to White Sulphur Springs the description was added, beginning with the words "more particularly described as follows:" The clause that the mortgage was subject to the First National Bank mortgage was originally put in the mortgage at Neihart. The latter one of the two affidavits to this mortgage was added after I reached White Sulphur Springs, which was on the evening of the 13th of July—that is one day after the date of the execution of the mortgage by the mortgagors. (The affidavit referred to by the witness is his own, to the effect that he was the attorney of the Chicago Title & Trust Co., the mortgagee; that plaintiff was absent from Meagher county at the time of the execution and delivery of the mortgage and that the mortgage was made in good faith, to secure the amount named therein, and without any design to hinder or delay the creditors of the mortgagors, or either of them.) I advised plaintiff to take up the Atkinson mortgage and take possession under both mortgages. They sent me $4,100, which I turned over to Atkinson and had the Atkinson mortgage assigned to us. I then took Mr. Beech to Neihart, and Harrison, the agent of Atkinson, turned the stock over to me. This was on or about July 30th, 1893. Beech acted as plaintiff's agent. After Beech had possession about a week, Finch, Van Slyke & Co. attached.

On cross-examination he said that he had said nothing to

Burchard & Pierse about verifying the mortgage, and that after the insertion of the description of the freighting outfit neither of said mortgagors ever did verify. Witness further said that when he went to Neihart, Harrison was in possession of the property under the Atkinson mortgage. Harrison had a sign on the building as agent. This was taken down after the witness went to Neihart and the sign of O. E. Beech was substituted. When the attachment was made, witness demanded possession upon Harrison. Witness also said that when he made demand on the sheriff, he notified him that he claimed under both mortgages—the Atkinson and the Trust Company mortgage—and that when he took possession he was acting solely for the Chicago Title & Trust Company.

W. H. Harrison testified for plaintiff. He said that he was in charge of the Burchard & Pierse stock from July 3d until about July 31st., when he turned it over to Mr. Berry; that between the 13th and 31st of July there was something over $600 worth of goods sold; thereafter the Atkinson order was produced and witness turned everything over to Berry and walked away.

E. A. Young, of the firm of Finch, Van Slyke, Young & Co., testified that on August 7th, 1893, he was in Neihart and that Mr. Beech, who claimed then to be in possession of the stock formerly owned by Burchard & Pierse, told him that he was in possession under the mortgage given to Atkinson for about $4,000, and that he had paid off about $1,000 of this mortgage from the sales of merchandise; witness also said that Beech had the keys and delivered them up at the time the officer made the attachment.

On cross-examination witness said that Beech told him he was in possession under the Atkinson mortgage for the reason that he understood that all the balance of the mortgages were void and of no account; that he understood from Atkinson that about $1,000 of the proceeds of sales had been turned over on the Atkinson mortgage; that he knew from some source that the Trust Company had purchased the Atkinson mortgage.

Max Waterman, Esq., testified that as counsel for Finch,

Van Slyke, Young & Co., he went to Neihart at the time of the attachment by that firm; that Beech then said that he was in possession as the agent of Atkinson, and that the Trust Company had purchased the Atkinson mortgage and gone into possession under that mortgage; that something was said about a number of mortgages being void and that as soon as witness found that Beech did not claim to be in possession except under the Atkinson mortgage, then witness advised Finch, Van Slyke, Young & Co. to attach.

Richard Bennett, in behalf of the intervenors, testified that he drew all the mortgages made by Burchard & Pierse dated July 12th, 1893, to the intervenors in this suit, and that Berry took possession of the Burchard & Pierse stock about July 31, 1893.

W. H. Harrison was recalled in behalf of the intervenors and stated that he was in possession of this property under the Atkinson mortgage, but that he acted as agent, subordinate to the Atkinson mortgage, for Lindeke, Warner & Schurmeier; Finch, Van Slyke, Young & Co.; Brown Bros.; Wyman & Partridge Co. and McKibbin & Co.—in fact for all the mortgages executed about the date of the intervenors' mortgages; that Atkinson permitted him to act as agent for these parties upon the condition that their mortgages were to be subordinate to his. Witness further said that the attorney for the intervenors wanted him to act as agent for these mortgagees but he declined until Atkinson consented, provided his mortgage was recognized first, and that when he yielded possession to Berry he did so believing his duty was to do what Atkinson told him to do, and in acting for other creditors he acted for them pursuant to the instructions given by Atkinson.

*Smith & Gormley* and *Richard Bennett*, for Intervenors and Appellants.

I.   Plaintiff's mortgage, taken on July 12, after all of intervenors' mortgages had been given, was by its terms, subject to intervenors' mortgages, for intervenors' mortgages were "executed and dated" prior to the date and execution

of plaintiff's mortgage and were filed for record prior to the filing of plaintiff's mortgage.   By the terms of said mortgage it was subject to intervenors' mortgages even though intervenors were not in the possession of the mortgaged property, and hence, when plaintiff took possession under its mortgage on July 31, it must have taken possession for the mortgagees recognized in its mortgage as well as for itself.   Plaintiff's possession must have been intervenors' possession also, and the record of plaintiff's mortgage in the clerk and recorder's office, containing the clause referred to, and the taking possession of the mortgaged property by the plaintiff, were notice to the defendants as the character of that possession. (2 Cobbey on Chattel Mortgages, § 1039; *Flory* v. *Comstock*, 28 N. W. 703; *Brown* v. *O'Neal*, 30 Pac. 539; Freeman on Cotenancy, § 167.)   Furthermore, intervenors, through their agent, Harrison, were in possession under their mortgages at the time of the execution of plaintiff's mortgage.   Intervenors' mortgages were, therefore, at that time good as against all the world without affidavit, acknowledgment and filing for record, and under the clause in plaintiff's mortgage referred to the intervenors' mortgages would continue to hold priority over plaintiff's mortgage.   Any act done by plaintiff in protecting its mortgage would likewise protect intervenors' mortgages.   The changing of agents by plaintiff, in substituting Beech for Harrison, could not deprive intervenors of their possession.

II.   Though accompanied by defective affidavits, intervenors' said mortgages were duly executed, dated, and filed for record prior to plaintiff's mortgage, and hence plaintiff took its mortgage subject to intervenors' mortgages.   The clause inserted in the mortgage making it subject to intervenors' mortgages shows such to be the plain intention of the mortgagors and similar clauses in intervenors' mortgages show that the mortgagors intended that all the mortgages given by them should come in a certain stated order as to priority.   The mortgagors themselves could not afterwards question the relative priority so expressly declared by them, and neither could

any of the mortgagees question the validity of the prior mortgages recited in their own. (*Perrine* v. *First National Bank of Jamesburg*, 27 Atl. 640; *Clapp* v. *Halliday*, 2 S. W. 853; *Flory* v. *Comstock*, 28 N. W. 703; 2 Cobbey on Chattel Mortgages, § 1039; Jones on Chattel Mortgages, § 494.)

*H. G. & S. H. McIntire*, for Respondent.

I.    Defendants in order to sue out their attachment had to file an affidavit containing *inter alia* a clause that their debt was not secured by mortgage, pledge or lien.  By this act they waived any rights they may have had by reason of said mortgage and are estopped from claiming under it in any way. (Jones on Chattel Mortgages, § 565; 2 Cobbey on Chattel Mortgages, § 746; *Evans* v. *Warren*, 122 Mass. 303; *Dyckman* v. *Sevatson*, 39 N. W. 73; Bigelow on Estoppel (3d Ed.) 562, 600, 603; 1 Herman on Estoppel, §§ 13, 14; *Choquette* v. *Ortiz*, 60 Cal. 600; *Dyckman* v. *Sevatson*, 39 N. W. 73.)

II.    The chattel mortgage law as it stood at the time plaintiff's rights became vested must control.  This is the language of the code.  (Political Code § 5182, subd. 1.)

III.    The clause in plaintiff's mortgage that defendants and intervenors are seeking to take advantage of is "in case they (the mortgages mentioned) or any of them were duly executed, dated and recorded before that time."  Except the Atkinson mortgage none of said mortgages come within that provision; they were not duly executed, in that they lacked the statutory affidavit of good faith.  The word executed as there used means a compliance with the statutory provisions concerning chattel mortgages.  As against others than the parties thereto a chattel mortgage is of no avail unless the statute is complied with.  It is not executed unless the statute is followed.  (1 Cobbey on Chattel Mortgages, § 391; *Butte Hardware Co.* v. *Sullivan*, 7 Mont. 307, and the other Montana chattel mortgage cases.)

IV.    The alteration complained of is but an amplification of a description previously contained.  It added nothing to the instrument nor was the effect of the instrument changed

in any respect.    Nor was the alteration a material one.  (*First National Bank* v. *Wolff*, 21 Pac. 551; *Fisherdick* v. *Hutton*, 62 N. W. 488; *Churchill* v. *Bielstein*, 29 S. W. 392; *Murray* v. *Klinzing*, 29 Atl. 244.)    Nor had it been made subsequent to the delivery of the instrument.    The testimony shows that this instrument was not not to be deemed delivered except at the option of the mortgagee.    This option was not exercised until immediately prior to the filing of the mortgage with the county clerk, hence the delivery did not take place until then. But the discussion is idle in view of the fact that the alteration, if it be one, was expressly consented to.

V.  As to intervenor's appeal from plaintiff's judgment.  We have nothing to do with them.    Before they can maintain a suit against us they must first show that we have done them some wrong.    This, however, they have failed to do.  Possibly if they had been in possession of these goods with ourselves they might maintain an action against the common wrong-doer, but not against us.    It is a strange position to seek to deprive us of our property because somebody else deprived them of theirs.    That they were not in conjoint possession of these goods and had no right to the same is shown by the evidence, and by the argument of defendants.    That their mortgage was not superior to ours by reason of their construction of the clause they depend upon is sufficiently shown in a former part of this brief.

HUNT, J.—Inasmuch as the inception of any rights which may have accrued to the respective parties to this suit and the judgment rendered therein antedate the adoption of the codes of 1895, the law as it stood at the time such rights became fixed must control.    The statute, section 5182, of the Political Code, 1895, expressly provides, among other things, that the repeal of the old statutes should not abridge, abolish or impair any vested right or rights accruing or accrued; nor should such repeal change the force and effect of any act done or judgment rendered, or suit or proceeding had or commenced under the law as it stood prior to the taking effect of

the codes and repeal clauses thereof, but all such rights and liabilities may be enforced and the proceedings continued conforming the same, as far as practicable, to the provisions and remedies prescribed by the new codes, etc.  This section preserved rights founded upon past transactions.  The judgment herein determined the rights of the parties before the court as the law stood at those times.  To now consider the new mortgage law as applicable and to award one mortgage a priority over another, not awarded by the statute in force when the transactions were had and the judgment was rendered, would, by postponing the right to enforce certain liens as prior to others, materially lessen the value of the security for the payment of certain of the debts and thus change the force and effect of the judgment already rendered, and so directly conflict with the letter of the provisions of the new codes.

We, therefore, dismiss defendants' contention that the new codes affect the mortgages involved in this suit, so as to exchange their priorities as the old law may have fixed them, and we shall consider the case with relation to the code of 1887.

The case may be simplified by first deciding whether defendants and intervenors had mortgages, or liens or pledges upon the personal property of Burchard & Pierse, and if they did what were their relations between themselves and plaintiff.  The first mortgage to Atkinson is admitted to be valid in all respects.  It is also conceded that Atkinson had possession of the property under this mortgage, such possession being through his agent Harrison.  But Harrison had hardly entered upon possession when the mortgagors to secure other indebtedness, executed subsequent mortgages to Finch, Van Slyke, Young & Co., defendants, and to the several intervenors.  These several mortgages were all executed by Harrison, who consented to act, and did act, as the agent of the defendant, Finch, Van Slyke, Young & Co., and intervenors, with the express consent of Atkinson, the mortgagee in the first (Atkinson) mort-

gage. Harrison verified the affidavit of good faith as the agent of the mortgagees named in the mortgages, and we think under the evidence held possession as much for their benefit as for Atkinson. It is true that the affidavits to these mortgages given to defendants and intervenors were defective; but the mortgages, under section 1538 of the Fifth Division General Laws, code 1887, were none the less valid between the parties to them, while as against third parties delivery of possession and taking actual possession under the mortgages before the acquisition of rights by such third parties, cured the invalidity of the instruments arising from their insufficient verification. (Jones on Chattel Mortgages, § 178; *Chapman v. Sargent* (Col.) 40 Pac. 849; Cobbey on Chattel Mortgages, § 498.) This doctrine is well sustained by authorities, and is thus stated in *Petring* v. *Chrisler*, 90 Mo. 649:

"Where the mortgagee, in good faith, takes actual possession of the goods prior to the levy of the attachment, for the purpose of securing the payment of his debt and continues to hold the actual possession up to the time of the levy, he will be protected, and will, in that event, hold the goods as against the subsequent attaching creditor, and that, under this state of facts, it is immaterial that the mortgage contains stipulations which render it void, except as between the parties."

In *Leopold* v. *Silverman*, 7 Mont. 266, a chattel mortgage was held void as to third persons because of the omission in the mortgage and the affidavit thereto, to show the interest of a certain firm in an indebtedness to secure which the mortgage was given. But the court said, that : "If the mortgagees were really in undisputed possession of the goods mortgaged, no affidavit would be necessary at all, and the defects so apparent in the affidavit would become immaterial."

This undisputed actual possession of Harrison, was therefore, until July 31st, at least the joint and valid possession of all the mortgagees (other than plaintiff), including the possession of defendants Finch, Van Slyke, Young & Co., who held the first mortgage after the undisputed one to Atkinson.

But right here another mortgage is to be considered with

its attendant facts.    Directly after the mortgages to interven-
ors had been given, and while Harrison was in possession as
above stated, to-wit : July 12th, 1893, the failing debtors
gave still another mortgage—to the plaintiff in this suit.  This
mortgage included the same property which had theretofore
been mortgaged, namely : the stock of goods and book ac-
counts, etc., of Burchard & Pierse and certain other property,
which at the time of the execution of the mortgages, by the
mortgagors, was described as follows:    " The freight outfit of
Burchard, Fowler & Pierse, consisting of sixteen head of
horses, all freight wagons and harness, being same property
described in mortgage given to First National Bank of Nei-
hart, Montana, and bearing same description.    This mortgage
subject to mortgage of First National Bank aforesaid for
$1,500; kept in Neihart and on road freighting; more par-
ticularly described as follows : "    The mortgage authorized
the mortgagees, or their attorney, to remain in .possession of
the property mortgaged, and also contained the following
clause :    "This mortgage is given subject to the following
mortgages in case said mortgages or any of them are duly
executed, dated and recorded prior to the date, execution and
recording hereof, to-wit : F. P. Atkinson, $4,100; Finch,
Van Slyke, Young & Co., $1,917; Lindeke, Warner & Schur-
meier, $154.14; Foot, Schultz & Co., $485; M. McKibbin &
Co., $412.41; Brown Bros., $1,684.50."
    It appears that when this mortgage was executed and veri-
fied by the mortgagors, not having at hand a more detailed
description of the "freighting outfit," the attorney of the
mortgagees was given authority by the mortgagors to con-
sider the mortgage absolute at his option and to consult a
mortgage on record at the county seat some forty miles away,
for the purpose of securing a further description of said out-
fit, and when so secured to add to the description already given
the more specific designation of such freighting outfit.    The
next day the attorney for the mortgagees attached to the mort-
gage an amplified description of the wagons and animals con-
stituting said outfit, and thereafter, without the presence of

the mortgagors, the attorney verified the affidavit of good faith in behalf of his clients and then filed the instrument with the county clerk.

We shall treat this mortgage as valid, disregarding the appellants' contention that the description of the freighting outfit, which plaintiff's counsel added to the description already in the mortgage, "constituted a material change in the instrument after execution, acknowledgment, verification and delivery and thus rendered it void and of no effect." The mortgage contained a sufficient description of the freighting outfit before the more specific description was added. There was a complete means of identifying the property by reference to it and such inquiries as the instrument itself suggested. The property was described as " the freighting outfit of Burchard, Fowler & Pierse consisting of sixteen head of horses, all freight wagons and harness, being same property described in mortgage given to First National Bank of Neihart, Montana, and bearing same description. This mortgage subject to the mortgage of First National Bank aforesaid for $1,500, kept in Neihart and on road freighting, more particularly described as follows : " This was sufficient not only between the parties, but as to others who had in good faith acquired rights against the property. (Jones on Chattel Mortgages, § 53, *et seq.*)

But assuming the law did demand a more elaborate description of the property, it would seem under the circumstances of the case that the mortgage was still not void as to defendant. The agreement between the parties was that the mortgagees' attorney could consult the bank mortgage and then insert the description which he did insert, and furthermore, that the mortgage should be considered absolute at the option of the mortgagees' counsel. No rights intervened between the time that plaintiff received the mortgage at Neihart and added the description, and verified and filed the mortgage at White Sulphur Springs. The added description was not the inclusion of property not already included, nor was it an alteration of the contract between the parties; nor was it a fraud in

fact. It amounted to the elaborated expression of the already expressed intent of the parties, made in conformity with their positive authorization and before the instrument was finally delivered. Under these circumstances the mortgage should not be regarded as void. (*Fisherdick* v. *Hutton,* 62 N. W. 488.)

Upon another ground it would seem this mortgage must be held valid as against the defendant. If we still assume it was defectively executed, we nevertheless find a possession in plaintiffs under it before defendants made their levy of attachment. This proposition has heretofore been discussed and need not be dwelled upon. The fact of possession by the mortgagees before the attachment of defendants was levied distinguishes the case from *Marcum* v. *Coleman,* 10 Mont. 78, and *M. M. Co.* v. *Johnson,* 9 Mont. 542, cited by the appellant defendant. Appellant makes a point of the fact that taking possession was delayed until some nineteen days after the filing of the mortgage; but if the mortgage was good between the parties, in the absence of fraud and of any intervening rights accruing before possession was taken, why should it be held void on this ground?

We, therefore, have this resume of affairs: Up to July 31, Atkinson, Finch, Van Slyke, Young & Co., defendants, and the intervenors were all in actual, valid possession of the property, with Harrison as their agent. Harrison stood in a capacity not unlike that of an assignee of an insolvent debtor with preferred creditors under an assignment. The mortgagors were not in possession, and his duty was to watch the property and duly apply it to the payment of the debts due by Burchard & Pierse in the order of the mortgage liens filed, and pay over the surplus, if any, to the mortgagors. Now, while he was so executing his trust and still held possession, the mortgagors executed the mortgage to the Trust Company. This brings us to consider another point in this last mentioned mortgage with its effect upon the various phases of the case. It was given subject to Atkinson's, defendants' and intervenors' mortgages " in case said mortgages, or any of them, are

duly executed, dated and recorded prior to the date, execution and recording hereof,'' etc.

. Testimony was heard as to exactly what was meant by the words ''said mortgages or any of them are duly executed,'' etc., and it clearly appeared that the mortgagees in the mortgage simply wished to reserve to themselves all right to assail the validity of each and every of said prior mortgages, and to be bound only by such of them as might be valid and prior to its own. Plaintiff was fighting for priority, that is all. But it should not be.allowed in this instance to avail itself of the insufficient verification of the prior mortgages described in its own mortgage, because, as said before, even though there were defective verifications of such mortgages, yet the mortgagees were in actual and undisputed possession of the mortgaged property by Harrison. their agent, before and at the time plaintiff's mortgage was executed, and for the further reason that plaintiff's attorney was on the ground the day that Harrison took possession for the mortgagees with Atkinson's express consent, and had full notice of such actual possession before he secured the mortgage to this plaintiff. The testimony of Berry, counsel for plaintiff, is that Burchard & Pierse had given all these prior mortgages, and it was because of the amount of these liens and their possible validity that he pressed for the additional security of the freighting teams, etc. Under the facts, therefore, we do not think plaintiff is in any position to ask the court to ignore the possession by the other mortgagees of the stock of goods and other property included in their mortgages, and to adjudge their mortgage liens inferior to its mortgage. Just what lien upon the freighting outfit plaintiff had is immaterial in the case, because those chattels never were in plaintiff's possession, nor were they levied upon by the sheriff.

We find, therefore, that on July 31st, the mortgages stood in these positions : First, Atkinson's; next, defendant's Van Slyke & Co., then the several intervenors' in their respective orders, and finally the plaintiff's. On that day the plaintiff by its counsel, Mr. Berry, purchased the Atkinson mortgage,

then went up to Neihart and placed one Beech in charge. Berry delivered an order to Harrison, signed by Atkinson, first mortgagee, directing him to turn over possession to Berry. Berry only claimed to act for the plaintiff, under its own and the Atkinson mortgages. Harrison, forgetting apparently that he was the agent of other mortgagees and in possession for them as well as for Atkinson, delivered possession to Beech, an employe of Berry, who remained in sole charge until August 7th. It becomes important, therefore, to ascertain exactly what Beech's relation was toward the defendant Finch, Van Slyke, Young & Co. and the intervenors. If Harrison had refused to surrender the possession he held under all the mortgages except Atkinson's, the case would be less complicated; but evidently he acted entirely under Atkinson's instructions and walked out. But Atkinson had no authority to order Harrison to surrender any possession to plaintiff except such as he held under his own mortgage. He had theretofore consented to and acquiesced in the joint possession of the property by Harrison as the agent of the subsequent mortgagees as well as for himself, and so long as such mortgagees made no attempt to disturb his rights, his possession and theirs was jointly maintained by their one agent. Atkinson could not by his sole order divest other mortgagees of their possession, for beyond looking after his own interests he had nothing to do with their mortgages except by way of recognition of Harrison as their agent in possession with him. Therefore, Harrison should not have yielded to Beech any possession other than such as he held for Atkinson. But as he did give up to Beech, the question is : ought his principals, the mortgagees other than Atkinson, to lose their priorities of lien, or should Beech be regarded as holding possession for such other mortgagees as well as for Atkinson and this plaintiff?

We must remember that Berry well knew of all these prior mortgages and of the joint possession of all the mortgagees under them, which, as heretofore said, made the instruments valid. Therefore, when Berry purchased the Atkinson mort

gage for plaintiff and plaintiff went into possession under it by substituting Beech for Harrison, Beech should be regarded not alone as a mortgagee taking the same possession Atkinson had under the mortgage, but as assuming that possession for Atkinson's assignee recognizing those subsequent mortgagees for whom Harrison with Atkinson's consent agreed to act, and in whose right of possession Atkinson acquiesced so long as their rights were subordinate to his own. It would be most inequitable to hold that, because Harrison yielded to Beech in the manner he did, this plaintiff had a possession sufficiently good under Atkinson's mortgage to make that a valid first lien against the world, yet that Harrison's surrender subordinated the intervenors' mortgages to plaintiff's. The plaintiff having taken its last mortgage as well as the Atkinson mortgage with full knowledge of the intervenors' and defendants' actual possession and claims, cannot ask to be made first lien holder thus affirming the possession of Harrison, (recognized to be as well for others as for Atkinson), yet disaffirming that possession as for other mortgagees, in order to have its last lien precede others superior to its own.

The correct, and plainly the equitable view of the case is that, inasmuch as plaintiff knew of the possession under the preceding mortgages, which were valid and subsisting liens when Berry took possession, the priority of those liens over plaintiff's mortgage must be sustained, and that Atkinson's consent that Harrison should remain in possession for intervenors and defendants never having been withdrawn, Harrison's substitute Beech should be treated as having held for plaintiff by virtue of Atkinson's priority under the first mortgage, but that he held under the last mortgage as in subordination to the several other mortgages under which Harrison held and which were recited as subsisting mortgages in the plaintiff's mortgage.

We now advance to August 7th, upon which day Finch, Van Slyke & Co., defendants, sued Burchard & Pierse on their debt and attached the whole stock of goods which had been mortgaged to them by Burchard & Pierse. Before pro-

curing the writ of attachment they caused the balance due on the Atkinson mortgage to be deposited with the county treasurer to the order of the mortgagee.   Finch, Van Slyke & Co. procured a judgment against Burchard & Pierse for the amount of their mortgage $1,917.10.   Under execution they sold the stock for $5,372.75.   After this present action was instituted, plaintiff accepted the $3,100, deposited as balance due on the Atkinson mortgage.   It is contended that the levy was void because the deposit was not made before the property was taken, as would seem to be required by section 1546, page 1071, Compiled Statutes, 1887.   This question, however, becomes immaterial inasmuch as Finch, Van Slyke & Co. had no right to attach until they had exhausted their remedy by foreclosure sale under their mortgage lien.   This has been decided in the case of *Largey* v. *Chapman*, *ante*, page 563.   But the levy being void, should the defendants be deprived of their mortgage lien ?   We think not.   There was no valid lien acquired by the attachment—there could not be if the mortgage lien was valid and subsisting.   That their mortgage was valid has been heretofore decided.   Therefore, as mortgagees they were obliged to exhaust their mortgage security before attachment, and they did not waive their claims under the mortgage in order to attach, unless estopped by facts and conditions not appearing in this case.   The defendants, therefore, have a right to enforce their lien as the first of the mortgages given subsequent to the Atkinson mortgage.

Finally we inquire whether defendants were trespassers. Towards plaintiff they were not so far as the Atkinson mortgage is concerned, because when the plaintiff accepted the deposit of $3,100 as fully liquidating the Atkinson mortgage, it waived that question.   But as against these intervenors' rights and as against the plaintiff's lien under its last mortgage, defendants stand in a different light.   The possession of Beech being a possession which should avail all the intervenors as well as the other mortgagees, when defendants, including the defendant sheriff, levied their attachment and sold the prop-

erty under execution they were trespassers, and notwithstanding the fact that Finch, Van Slyke & Co. had rights as mortgagees, they and the sheriff nevertheless became liable to the plaintiff mortgagee under its last mortgage and the intervenors' for the value of the property so converted. (Jones on Chattel Mortgages, § 448.)

The district court, we are advised, gave plaintiff judgment upon the ground that the intervenors never had possession, hence had no rights. Under this view the question of the value of the property converted became unimportant as the mortgagors have made no complaint. But under the ruling of this court the value is material; therefore, the cause must be sent back to the district court for re-trial of that question alone, and for judgment thereafter.

It being conceded by all parties that the plaintiff is entitled to the amount received by it on payment of the Atkinson mortgage, that feature of the case may be disregarded, and plaintiff should be allowed to retain the sum it received.

The single point to be re-tried is the value of the property at the time of the conversion. When this is determined by the court, the judgment should be that the liens stand in the order we have decided they maintain to one another, namely, first, plaintiff Atkinson's mortgage, then defendants' Finch, Van Slyke, Young & Co.'s mortgage, then the intervenors' mortgages in their respective orders and lastly the plaintiff by its own mortgage lien.

It should further be adjudged that defendants have been guilty of a conversion, and that although they are entitled to first be repaid the amount they have paid on the Atkinson mortgage, $3,100, and to the amount of their own mortgage as prior to intervenors' and plaintiff Trust Company's mortgage, yet after receiving the amount of their said mortgage, to-wit: $1,920, they are liable to intervenors and Trust Company for any sum in excess of the amount of their own mortgage, to the extent of the value of the property at the time of the conversion.

We think that the defendants should pay the costs of this

appeal.    The judgment is therefore reversed and the case is
remanded with directions to proceed as above stated.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.

---

## ON MOTION FOR REHEARING.

PER CURIAM.—Motion for rehearing is made upon the
ground that the court overlooked the fact that the value of
the property sold was agreed to be $12,500 by stipulation of
the parties at the trial, and that, therefore, the issue of value
was eliminated from the case.    But a re-examination of the
record upon this point confirms us in our opinion that the
question of value ought to be retried.

Plaintiff's complaint avers that when plaintiffs took posses-
sion of the property described in the chattel mortgage, its
value was $12,500.    The defendants by answer denied this
averment, or that the property was of any greater value than
$6,000.    The same denial was made to intervenors' allega-
tions of value.    This was the condition of the pleadings as to
the issue of value upon the day of the trial.    Upon that date
defendants filed an amended answer to the plaintiff's com-
plaint.    In this answer the defendants elaborately set forth
the mortgage to themselves, and their contention that the
plaintiff ought not to be permitted to assert any claim against
defendants on account of their attachment of the goods, or to
receive any moneys "of the value of said goods as found to be
at the time of the taking until there shall have first been de-
ducted and awarded to defendants other than the sheriff, the
sum of $3,100 so deposited by them and received by the
plaintiff," etc.    This pleading of the defendants amounted to
a contention for the very rights which this court in the opin-
ion preserved to them, and we think the language used demon-

strates that defendants insisted on an issue of the value. The plaintiff moved the court to strike out all such contentions of defendants, because they were sham and immaterial and constituted no defense. The court sustained this motion. Just when the order in relation to this motion was made does not clearly appear. It appears, too, that at the trial, on motion of intervenors, the court struck out substantially the same matter pleaded by the defendants in answer to the complaints in intervention. The admission of counsel, made prior to the trial, that no proof need be offered to sustain the allegation of that paragraph of the complaint to the effect that the value of the property was $12,500, and that at the time of the trial the allegation of value was true seems to have been made for the purposes of the trial as the court viewed the issues to be tried.

Under the view we took of the case, the matter contained in paragraph B, which was stricken out, constituted proper defenses. The defendants could never have meant to surrender the issue of value so long as their defenses stood raising that issue. But when the court struck out the paragraphs pertaining to the value of the property, it would seem that proof upon that issue then became immaterial because of the ruling of the court. Upon the argument of the case in this court, we were advised by the counsel that the district court was of the opinion that defendants and intervenors never had possession of the property, and that, therefore, they had no rights. If such were the views of the district court at the time of the trial, plainly the defendants could not rely upon the issue of value : therefore proof upon that issue may have been dispensed with by an admission that, because of the ruling of the court, for the purposes of that trial the value might be taken as greater than the pleadings themselves had confessed it to be. It is difficult for us to believe from all the pleadings filed and proceedings had and from their brief filed herein that the learned counsel for the defendants intentionally abandoned the issue of value, and thus practically abandoned their pleaded case; for, if their defense of value could prevail, its advantage

to them would be to show a value lower than the amount of the claims of the plaintiff and intervenors.

The record is not as clear as it should be as to how the stipulation came to be made, but, inasmuch as the issue of value has become so very important under our opinion, and was so immaterial in the lower court, we do not feel justified in holding that any ambiguities in the record should deny to the defendants the opportunity to retry the issue, especially when defendants contend they did not waive the issue at all.

*Rehearing denied.*