WESTHEIMER ET AL., APPELLANTS, *v.* GOODKIND ET AL., RESPONDENTS.

No. 1,182.]

[Submitted January 29, 1900. Decided April 16, 1900.]

*Chattel Mortgages—Future Advances—Defective Execution— Bona Fide Purchaser—Purchaser with Notice—Intent to Defraud Creditors—General Creditor—Creditor with Lien —Statutory Construction—Statutes in Derogation of Common Law—Findings—Exceptions—Transcript on Appeal.*

1. Where a chattel mortgage was given to secure a note, and a part of the sum secured was for future advances, the mortgage was not, as matter of law, fraudulent as to creditors, as it was not necessary that the mortgage should show the amount of the intended advances.

2. The question whether a mortgage—given to secure an amount then owing and also future advances—was given with an honest purpose and intent is ordinarily one of fact for the jury to determine under proper instructions from the court.

3. A defectively verified and acknowledged chattel mortgage on property, the possession whereof is retained by the mortgagor, made while the Compiled Statutes of 1887 were in force, was invalid as against the rights and interests of any other persons than the parties thereto, and one who purchased the property after the adoption of the Codes of 1895, with notice of the mortgage, acquired a title thereto superior to the lien of the mortgage, and the mortgagee could not take the property thereunder.

4. A simple or general creditor has no right to attack the validity of a sale or transfer made by his debtor, upon the ground that it was either actually or constructively fraudulent as to creditors; a person who would avoid a sale or transfer for the rea-

son that it was made with intent to defraud him of his demands, must have a lien or charge upon, or an interest in, the particular property which he desires to have subjected to the payment of his claim.

5. Compiled Statutes 1887, Div. V, Sec. 1538, providing that a mortgagee should have a lien on the mortgaged property in possession of the mortgagor, when the mortgage was duly verified and acknowledged, is to be strictly construed, and it is in derogation of the common law.

6. Civil Code 1895, Section 4652, providing that statutes in derogation of the common law should be liberally construed, does not apply to Compiled Statutes 1887, Div. V, Sec. 1538, requiring chattel mortgages to be duly verified and acknowledged.

7. A subsequent-purchaser in good faith is one who buys without notice of the rights of third persons and without intent to defraud creditors or other persons of their demands.

8. Under the provisions of the Compiled Statutes of 1887, a purchaser's fraudulent intent, by whatever evidence it be proved, is without legal significance; but under the Codes of 1895, a fraudulent intent, howsoever proved, is fatal to the purchaser's title when it meets the lien of a prior mortgage.

9. Where special findings are inconsistent with the general verdict, the former control.

10. The only exceptions properly included in a transcript on appeal are those of the appellant.

*Appeal from District Court, Lewis and Clarke County; Henry C. Smith, Judge.*

ACTION by Ferdinand Westheimer and others against A. L. Goodkind and another for conversion. From a judgment in favor of defendants, and an order overruling a motion for a new trial, plaintiffs appeal. Reversed.

### STATEMENT OF THE CASE.

This action was brought to recover damages for the alleged conversion of personal property, the title to which is claimed by the plaintiffs under a sale thereof by one Reeves to them. The jury returned a verdict for the defendants. The plaintiffs have appealed from the judgment, and from the order denying their motion for a new trial.

The facts necessary to be stated are these: Reeves and one Powell, co-partners under the firm name of Reeves & Powell, were engaged in the dramshop business at Malta, in Valley county, and on the 10th day of May, 1895, were indebted to Wise & Goodkind in the sum of $374.14 for goods sold. On that day Powell made to the defendant Goodkind, a member of the firm of Wise & Goodkind, a chattel mortgage upon the property in question, to secure the payment of a note of Reeves & Powell to Goodkind, due at seven months, for $600,

which amount included the indebtedness mentioned, and was intended to cover such future advances by way of credit as the firm of Wise & Goodkind might make. Powell subscribed to the mortgage the name of his firm, and also the names of himself and Reeves, as individual persons; he also subscribed his name and that of Reeves to the affidavit accompanying the mortgage, and the notary certified that both Reeves and Powell were sworn to the truth of the matter stated therein, and also certified that each of the mortgagors acknowledged that he had executed the instrument freely and voluntarily and for the uses and purposes therein mentioned; as a matter of fact, however, Reeves did not sign the mortgage or affidavit, nor did he make any oath thereto. The possession of the property remained with the mortgagors, and the mortgage was filed. Reeves afterwards acquiesced in the mortgage, but never signed or made affidavit to it. At the time the mortgage to Goodkind was executed, the debt of Reeves & Powell to the plaintiffs was $275.33, and on December 12th it amounted to $330.88. Some time during the summer of 1895 the firm of Reeves & Powell was dissolved, and Reeves became the owner, or was at least authorized to dispose, of the property. On December 12th he executed to the plaintiffs a bill of sale of the chattels to satisfy the indebtedness owing by the late firm of Reeves & Powell to the plaintiffs, who had actual knowledge of the prior mortgage. The sale was accompanied by an immediate delivery, and followed by an actual and continued change of possession, the plaintiffs remaining in possession until the property was taken from them by the defendants. On December 20th, 1895, the amount owing to Wise & Goodkind, or Goodkind, by Reeves & Powell, was $336.89; and on that day the defendant Willis, as sheriff, at the request of the mortgagee, took from the plaintiffs the possession of the property, and sold it under the authority vested in defendants by the chattel mortgage, and not otherwise, for the purpose of paying the amount last mentioned, with interest and costs of sale. At the sheriff's sale the property brought $435, the purchaser being an agent of the plaintiffs. The

jury, in addition to their general verdict for the defendant, made certain special findings, all of which are included in the foregoing statement, except three, and these are to the effect that the mortgage to Goodkind was made and received in good faith by the parties thereto; that the bill of sale to the plaintiffs was given by Reeves, and taken by the plaintiffs, for the purpose and with the intent of hindering the collection by Goodkind of the debt owing him, and to defraud him of the benefit of the mortgage.

*Messrs. Clayberg, Corbett & Gunn,* for Appellants.

*Mr. H. G. McIntire,* for Respondents.

This appeal is not one that commends itself as meritorious. The real question involved in it is whether the aid of the courts of Montana can be invoked to further and consummate a transaction conceived in iniquity for the purpose of cheating and defrauding an innocent person. It is amazing that such an attempt should be made, but as it is made and apparently seriously urged upon the consideration of this Court, the respondents submit the following in opposition to the same:

It is a frequent thing that recourse is had to the courts to uncover and do away with fraudulent contrivances, but a very rare occurence that they are asked to uphold and carry them out. Fraud and justice do not dwell together. (*Fraus et jus nunquam cohabitant.*) Bouvier's Dictionary, Title Maxims.

"Fraud both at law and in equity, when sufficiently proved and ascertained, avoids a contract *ab initio,* whether the fraud be intended to operate against one of the contracting parties, *or against third parties,* (italics mine) or against the public." (Bouvier's Dictionary, Title Fraud.)

"Fraud will vitiate even the most solemn transactions, and an asserted title to property founded upon it, is utterly void." *(United States* v. *The Amistad,* 15 Peters, 594.)

"A party cannot come into court with a fraud upon his lips and obtain relief. To such the halls of justice are not open." (*Gregory* v. *Haworth,* 25 Cal. 657.)

*Nemo ex proprio dolo consequitar actionem.* No one ac-
quires a right of action from his own wrong. (Bouvier's
Dictionary, Title Maxims.

These principles are self-evident, are salutary, and are in-
variably applied by the courts in cases of actual fraud. In
this case their force is sought to be avoided by an attempt to
show that the mortgage to Goodkind was not in compliance
with the statutes in force at the time it was made relating to
chattel mortgages. But this is immaterial. Plaintiffs are
obliged to recover on the strength of their own title, not up-
on the weakness of that of the defendant. · If through their
own terpitude they show no case the law will not aid them.
A case on all fours with the one at bar is *Fuller* v. *Paige*, 26
Illinois, 358; s. c. 79, Am. Dec., 379. The mere fact that
plaintiffs were in possession of the goods in question at the
time of the seizure will not avail. Such possession was a part
of, and incident to, the fraudulent contrivance. Lawful pos-
session cannot be predicated upon a void instrument, upon a
contract made in violation of law, or contra *bonos mores.*
(*Fuller* v. *Paige*, *supra*; *Wilson* v. *Voight*, 9 Colo. 618; 7
Lawson's Rights & Remedies, p. 5673, Sec. 3665, and cases
cited.) The mortgage to Goodkind was not void, as contend-
ed for by appellants. It was unquestionably good as between
the parties to it. This both by the terms of the statute,
Comp. Stat. Sec. 1538, and the consensus of all the courts.
Reeves and Powell, the mortgagors, were partners in busi-
ness; they were indebted to the firm of Goodkind Brothers;
they owned the goods in question; (Finding 6, Transcript p.
78); to secure this indebtedness and such future advances
as they might receive from Goodkind Brothers, the mort-
gage was executed and delivered; it was made and
received in good faith (Finding 7, Transcript p. 78);
and it was known to W. W. Reeves, the non-signing part-
ner, and ratified and acquiesced in by him prior to the fraud-
ulent bill of sale to appellants (Finding 8, Transcript p. 78.)
One partner may execute a chattel mortgage on partnership
assets to secure partnership debts, even without the consent

of the co-partner, (*Union Bank* v. *Kansas City Bank*, 136 U. S. 223) and a subsequent ratification and acquiescence on the part of the non-signing partner places the matter beyond controversy; (Cobbey on Chattel Mtges., Sec. 433, and cases cited; Jones on Chattel Mortgages, Sec. 46) and see *Waite* v. *Vinson*, 14 Mont. 405, which holds that a partner may sell partnership assets to pay the debts of the firm. This power is sufficient authority to execute a mortgage for the same purpose. (Jones on Chattel Mortgages, Sec. 46, *supra.*)

The mere fact that the debt owing by the mortgagors to Goodkind Brothers was less than that recited in the mortgage does not *per se* invalidate it. The mortgage was given not only to secure an existing debt but also such further advances as might be made to the mortgagors. A mortgage to secure future advances is valid and will be upheld to the extent of the indebtedness actually incurred. It is not necessary that the mortgage recite that it is to secure future advances. (Boone on Mortgages, Sec. 55; Jones on Chattel Mortgages, Secs. 94–96; Cobbey on Chattel Mortgages, Sec. 138; *Adams* v. *Lange*, 42 N. E. 1018 and cases cited; *Brown* v. *Kiefer*, 71 N. Y. 610; *Tully* v. *Harloe*, 35 Cal. 302; *Nicklin* v. *Nelson*, 5 Pac. 54; *Smith* v. *Auerbach*, 2 Mont. 348; *Tudor* v. *De Long* (Mont.), 46 Pac. 258.) Even if such a mortgage were considered bad it is not so as a matter of law, but is for the jury to determine. (*Wood* v. *Franks*, 67 Cal. 32.) Again the validity of an instrument of this kind depends upon the intent of the parties in making it. Such intent is a question of fact. (Compiled Statutes, p. 633, Sec. 231. It is true that under certain circumstances the law will hold constructively fraudulent an act of omission declared to be fraudulent without respect to actual fraud, but no such circumstances are presented here, and as a fact in the case the jury found that this mortgage was made and received in good faith (Finding 7, Transcript p. 78). The mortgage then being valid, at least between the parties to it, the mortgagee had the right to pursue his remedy of foreclosure. In doing so he found the property in the possession of the mortgagor, for such

possession as plaintiffs had, it being a fraudulent one was a nullity. No breach of the peace was committed in taking possession as the mortgage authorized; no attempt was made to foreclose the mortgage for an amount in excess of what was actually due under it. It is difficult then to see wherein there is any cause of complaint. Certainly appellants have none at their scheme being thereby frustrated. It is submitted that the foregoing sufficiently shows the want of any merit in this appeal; it is consequently with reluctance that other points in the brief of appellants herein are now discussed. It is claimed by appellants that inasmuch as the mortgage to Goodkind was not signed or sworn to by Reeves, one of the partners executing it, it is thereby invalid as against subsequent transferrees under the terms of Compiled Statutes, Section 1538, which was in force at the time the mortgage was executed. It is not my intention to claim that the mortgage in question is in strict compliance with the statute in question. I do not perceive that the section has any bearing upon the case. The appellants' rights, if any they have, are to be adjudicated by the law as it stood when they took their bill of salé from Reeves, to-wit, December 12, 1895. At that time Section 1538 *supra* had become abrogated by the adoption of the Codes (see Political Code, Sec. 5182) Section 3861 of the Civil Code taking its place. (23 Am. & Eng. Ency. Law, p. 284, and Note 5; *Holbrook* v. *Nichol*, 36 Ill. 161; 7 Lawson's Rights & Remedies, p. 5938, Sec. 3780; Bump on Fraud. Conv. p. 533; Wait on Fraud. Conv. Sec. 73; Compiled Statutes of 1887, p. 653, Sec. 225; 2 Cobbey, Chattel Mortgages, Sec. 606.) The possession relied on by appellants being founded in fraud was a nullity. The defendants were not wrong-doers or trespassers. They were acting in pursuance of a mortgage valid in all respects between Goodkind and the mortgagors and valid also between Goodkind and such persons as colluded with mortgagors to cheat and defraud him out of the benefit of his mortgage. (*Fuller* v. *Paige*, 79 Am. Dec. 379, and other authorities heretofore cited.

It is further said in appellants' brief: "With whatever in-

tent the transfer from Reeves to plaintiff was made, it was nevertheless good as between the parties. It was necessary for the defendants, before they could attack this transfer as fraudulent, to show a valid lien or claim against the property, which they did not do'' This statement is not the law under the facts of this case, nor has it any application to such facts. A transfer constructively fraudulent as against creditors by reason of some act or omission declared by the law to be necessary, is good between the parties to it, but voidable at the election of creditors who are thereby hindered in the collection of their demands. Such creditors, in order to avoid it, must have a lien upon the property fraudulently transferred either by attachment or execution, and to this extent the authorities go which are cited by appellants; but where the transfer is one made between the parties to it with the purpose and intent of defrauding another, both parties participating in the fraudulent intent, as in this case, then the transfer is absolutely void. And this is so even if the amplest consideration passes from the fraudulent vendee to the fraudulent vendor. (Wait on Fraud, Conv. Secs. 201, 207.) The fraudulent conveyance between Reeves and appellants occurred December 12, 1895. The Code provisions, therefore, apply to the same. (Civil Code, Sec. 4490.)

Certainly defendants are ''other persons'' with demands on the property in question under the terms of that statute, and consequently a transfer of such property in violation of that statute, can be attacked by them. That they are within this rule of law, attention is invited to *Greer* v. *Wright,* 52 Am. Dec. 111, and to the copious notes thereto on pages 113 *et seq.,* as also to *Fuller* v. *Paige,* 79 Am. Dec. 379, and the other authorities cited in the first part of this brief. Even at common law this transfer could not be upheld. (*Candagan* v. *Kennett,* Cowp. 434; see note on page 113, 52 Am. Dec.) It is absurd to say that defendants did not show a valid claim to this property. They showed, and justified their actions under a chattel mortgage made by the owners of the property in good faith and to secure an honest

debt.    Their action in taking the property as they did was in accordance with the express conditions of the mortgage, and in pursuance of law.    (See *Maddox* v. *Rader*, 9 Mont. 135; *Vose* v. *Whitney*, 7 Mont. 393.)    Instead of judgment being rendered in favor of appellants on the special findings herein, as appellants pray, damages should be assessed against them, under Rule XVIII of this court.    All of which is respectfully submitted.

MR. JUSTICE PIGOTT, after stating the case, delivered the opinion of the Court.

1.    At the time the mortgage was made to Goodkind to secure the payment of the $600 note, the real indebtedness of Reeves & Powell to Wise & Goodkind was $374.14, and the mortgage was given to secure the debt then existing, as well as future advances.    The plaintiffs asked the court to instruct the jury that the effect of the mortgage in the particular mentioned, was to hinder, delay, and defraud persons who were the creditors of Reeves & Powell at the time the mortgage was executed, and that if the plaintiffs were creditors at that time, and afterwards received a conveyance of the property in satisfaction of the indebtedness owing to them by Reeves & Powell, then their verdict must be for the plaintiffs. The refusal so to charge is assigned as error.    Counsel insist that where a chattel mortgage is given to secure an amount then owing, and also future advances, it is necessary that the mortgage itself shall show the amount of the intended advances.    The law is, however, very well settled that a mortgage need not itself disclose that it was given to secure the payment of future advances, and that it may be, as the one under consideration is, in the shape of a security for the payment of a sum certain, leaving the true nature and condition of the debt or obligation to be shown by evidence dehors the mortgage.    (Jones on Chattel Mortgages, 4th Ed., Sec. 96, and cases cited in the notes.)    The question whether such a mortgage was given with an honest purpose and intent is ordinarily one of

fact for the jury to determine under proper instructions from the court. (*Wood* v. *Franks*, 67 Cal. 32, 7 Pac. 50; *Davis* v. *Schwartz*, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289.) In the case at bar there was evidence tending to show that, in making the mortgage to secure the payment of a sum in excess of the debt then owing, the purpose of the parties was without intent to hinder, delay, or defraud any creditor of the mortgagors, and the findings of the jury are in accord with such evidence.

2.    The chattel mortgage was executed while Section 1538 of the Fifth Division of the Compiled Statutes of 1887 was in force, and prior to the 1st day of July, 1895, when Section 3861 of the Civil Code took the place of the former section. The defendants assert that the rights of the plaintiffs are to be determined by the statute as it stood when they purchased the property from Reeves, on December 12, 1895; and, if this position be correct, the provision of Section 3861, that a chattel mortgage is void against creditors of the mortgagor, and subsequent purchasers and incumbrances of the property in good faith for value, unless possession be delivered to and retained by the mortgagee, or the mortgage provide that the possession may remain with the mortgagor, and be duly verified, acknowledged, and filed as therein required, is applicable to the plaintiffs, who were purchasers for value, but not in good faith.    They had notice of the Goodkind mortgage, and this would in itself prevent them from being purchasers in good faith, within the meaning of Section 3861.    One buying with notice of a mortgage, or with intent to delay or defraud creditors, is not a purchaser in good faith.    The presence of such notice or of such intent will constitute him a purchaser *mala fide*, against whom the mortgage is valid under the present statute.

The position is untenable.    Section 3861 has to do exclusively with mortgages given after 12 o'clock noon of July 1, 1895; it does not in any manner affect mortgages theretofore executed.    When the mortgage to Goodkind was made and filed in May, 1895, it was, for the want of an affidavit and

acknowledgment such as Section 1538, *supra*, requires to accompany the instrument, invalid as against the rights and interests of any other persons than the parties thereto. That Section 3861 of the Civil Code did not vitalize the mortgage, or make it valid as to third persons acquiring rights and interests in the property after July 1, 1895, is apparent. The validity and effect of the mortgage must be tested and determined by the application to it of the law in force when it was made, and not by the application of Section 3861, which became the law subsequently, but which has no retroactive effect. (Sections 1625, 4651, of the Civil Code; *Chicago Title & Trust Co.* v. *O'Marr*, 18 Mont. 568, 46 Pac. 809, 47 Pac. 4.)

3. Section 1538 of the Fifth Division of the Compiled Statutes of 1887, *supra*, which was the law at the time the mortgage to Goodkind was executed and filed, provided that "no mortgage of goods, chattels or personal property shall be valid as against the rights and interests of any other person than the parties thereto, unless the possession of such goods, chattels or personal property be delivered to and retained by the mortgagee, or the mortgage provide that the property may remain in the possession of the mortgagor, and be accompanied by an affidavit of all the parties thereto, or, in case any party is absent, an affidavit of those present and of the agent or attorney of such absent party, that the same is made in good faith to secure the amount named therein and without any design to hinder or delay the creditors of the mortgagor, and be acknowledged and filed as hereinafter provided."

The possession of the chattels was not delivered to the mortgagee, but was retained by the mortgagors; nor was the mortgage accompanied by an affidavit of Reeves, one of the parties to it. The mortgage was therefore invalid as against the rights and interests of any other person than the parties thereto. Such is the denunciation of the statute, as interpreted in *Butte Hardware Co.* v. *Sullivan*, 7 Mont. 307, 16 Pac. 588; *Baker* v. *Power*, 7 Mont. 326, 16 Pac. 589, and in *Cope* v. *Minnesota Type Foundry Co.*, 20 Mont. 67, 49 Pac.

387. That the mortgage was made in good faith, and that the plaintiffs, when they purchased, had actual knowledge of its existence, did not serve to validate the mortgage as against their rights and interests, is apparent from the decision in *Milburn Mfg.-Co.* v. *Johnson*, 9 Mont. 537, 24 Pac. 17, which has been cited with approval in *John Caplice Co.* v. *Beauchamp*, 22 Mont. 261, 56 Pac. 278; and the same doctrine is announced in *McGowen* v. *Hoy*, 5 Litt. 239–245; *Long* v. *Cockern*, 128 Ill. 29; *Bingham* v. *Jordan*, 1 Allen, 373; *Travis* v. *Bishop*, 13 Metc. (Mass.) 304; *Rich* v. *Roberts*, 48 Me. 548; *Kennedy* v. *Shaw*, 38 Ind. 474; *Ross* v. *Menefee*, 125 Ind. 438, 25 N. E. 545; *Collins* v. *Wilhoit*, 108 Mo. 451, 18 S. W. 839. Other cases are to the like effect.

The jury found that the plaintiffs took the bill of sale and transfer of the chattels mortgaged to Goodkind for the purpose of satisfying the debt owing to them by Reeves & Powell; this finding is amply justified by the evidence. They found, also, that the bill of sale was given and received (a) for the purpose of hindering the collection by Goodkind of the indedtedness owing to him, and (b) with intent to defraud him out of the benefit of his mortgage. From these facts, what is the conclusion of law?

A simple or general, sometimes called a prowling, creditor, is not in a position to question the validity of a sale or transfer made by his debtor; that is to say, he has no right to attack it upon the ground that it was either actually or constructively fraudulent as to creditors,—for example: A., an insolvent debtor, sells all of his property to B. for a grossly inadequate consideration, each having the actual intent thereby to defraud A.'s creditors; A. remains in possession as theretofore. Here we have actual as well as constructive fraud; but C., who is a general creditor merely, cannot, at law or in equity, assail the transaction. As soon, however, as he acquires a lien upon the specific property which was the subject of the sale, his status is that of one who has brought himself, if the expression may be used, into privity with the property, and courts of law will then afford relief; after the

exhaustion of legal remedies, the extraordinary jurisdiction of chancery may be invoked, either to reach assets which cannot be seized under a writ of execution, or to remove a cloud upon the title to, or an obstruction standing in the way of legal process against, the property, which, if not removed, may prevent a sale at a fair price. But in any case, and in all cases, whether the relief sought be legal or equitable, the creditor or other person who, as plaintiff or defendant, would avoid a sale or transfer for the reason that it was made with intent to defraud him of his demands, must have a lien or charge upon, or an interest in, the particular property which he desires to have subjected to the payment of his claim. As to the general creditor, such a sale is voidable, in the sense that when he shall have acquired a lien upon the property affected, but not before, the sale becomes inoperative as to him, not only from the date when the lien was imposed, but *ab initio.* So that, when it is said that a transfer made with intent to defraud creditors is void as to all creditors, nothing more is meant than that it is inoperative as to lien creditors who assail it, and that, when successfully so attacked, the nullity relates back to the time when the debts or obligations were unsecured. The general creditor may choose to disregard the fraudulent sale or transfer, by taking proceedings against the chattels as if it had not been made; by levying his writ of attachment or of execution, he acquires a lien, and elects to treat the transaction as void. A creditor or other person may hold a mortgage upon chattels, with right to their possession. If it be a lien or charge which is valid as against a purchaser or incumbrancer, this fact will enable him to question the good faith of the transaction under which the purchaser or incumbrancer claims, and this he may do by taking the property in right of his lien, either with or without legal process, from the wrongful possessor, or he may bring and maintain an action to enforce the observance of his rights. Void though it be at the instance of any person having a specific lien or charge upon or an interest in the property which is valid as against the purchaser, until the acquisition of such

lien the transfer with intent to defraud creditors or other persons of their demands is unassailable, and vests in the purchaser a title good not only between the parties, but as to all the world. Of an act performed with intent to defraud creditors or other persons of their demands the law refuses to take cognizance in a civil action unless and until the act is sought to be annulled, or is treated as void, by some person who is clothed with the right to attack it; and hence the mere fact that the sale may be avoided *ab initio* by a creditor after he has obtained a lien does not confer upon him, before he acquires it, the privilege of dispossessing the purchaser; he must at the time he seizes or interferes with the property have some special interest in or lien upon it, or acquire some lien or interest by the seizure or interference; the lien or interest must exist when he takes possession, or must arise from possession, —in default of which he is a trespasser, for he is not in connection or privity with the property owned by the purchaser. Section 4490 of the Civil Code does not conflict with the views here expressed. It provides that "every transfer of property * * * with intent to delay or defraud any creditor, or other person, of his demands, is void against all creditors of the debtor. * * *" To the extent that this section is applicable to the facts of the case at bar, it is but declaratory of the common law. The transfer therein denounced as void is so only as to, and at the instance of, creditors having liens or charges upon, or special interests in, the property transferred.

Goodkind's status as a creditor, merely, is easily defined. He had no lien by attachment or execution; he did not assert any lien except that which he alleged was created by the mortgage. He and his co-defendant took and sold the chattels under the authority conferred by the mortgage, and not otherwise. He was therefore a simple creditor, unless the lien of his mortgage was valid as to the plaintiffs. If it was, then, upon the findings of fact, the defendants were entitled to the judgment in their favor which was entered; if it was not, the plaintiffs, upon such findings, should have prevailed,

and the judgment and order must be reversed.   The finding
that the transfer to the plaintiffs was made and received with
the intent to hinder the collection by Goodkind of the debt
owing to him by Reeves & Powell is therefore immaterial,
unless it may be considered as the equivalent of, or perhaps
as supplementing, the further finding that the transfer was
with the intent to defraud Goodkind out of the benefit of his
mortgage, and the latter finding be material.

Omission to comply with the provisions of Section 1538,
*supra*, rendered the mortgage invalid as against the rights and
interests of all persons other than the parties thereto.   Did
the plaintiffs have any rights or interests against which the
lien of the mortgage was void?   It seems clear that a naked
trespasser—for example, a thief or an embezzler, or one with-
out title of any kind as against the mortgagor—would have
no such right or interest.   The mortgage, being valid as to
the mortgagor, is a lien upon his property, as against those
who have no right thereto or interest therein.   The rights
and interests of third persons, acquired from the owner or
mortgagor of the chattels, which are protected by Section
1538, are those which might have been acquired had the
mortgage not been made.   The plaintiffs took the bill of sale
and transfer in satisfaction of the debt then owing to them by
Reeves & Powell, and entered into the possession of the chat-
tels sold to them; although made with intent to defraud Good-
kind out of the benefit of his mortgage, the sale was perfectly
good between the parties, and as to all persons except those
who had upon or in the chattels some lien or specific interest
which was valid as against the title of the plaintiffs.   Section
1538, which provided a method whereby a creditor or other
person was enabled to acquire and retain a special lien upon
chattels while the owner remained in possession, was in derog-
ation of the common-law rights of third persons, and must be
strictly construed.   As was said in *Milburn Mfg. Co.* v.
*Johnson,* 9 Mont. 537, 24 Pac. 17, and reaffirmed in *Wilson*
v. *Harris,* 21 Mont. 392, 54 Pac. 51:  "All *bona fide* creditors
stand on an equality before the law in respect to enforcing

payment of debts, unless this equality is varied by a provision of law giving a special lien, or enabling one to acquire a special lien by complying with the provisions of law.  If one attempting to create a special lien in his favor, or to take advantage of one provided by law, fails to comply with the provisions.of the law governing, then such creditor falls back into the common line occupied by the general creditors, and cannot invoke the rules or doctrines of equity to avoid this result.   *   *   *   It is an arbitrary provision of law which enables one creditor, in preference to another, to take and hold a special·lien on the personal property of his debtor, leaving the possession with the debtor; and that law demands a compliance with its terms.''   Nor does Section 4652 of the Civil Code of 1895, which is similar to Section 3453 of the Code of Civil Procedure, touching the construction of statutes in derogation of the common law, apply to Section 1538 of the Fifth Division of the Compiled Statutes of 1887, *supra*. (*Forrester et al.* v. *Mining Co.*, 21 Mont., at page 556, 55 Pac., at page 234.)   The statute then in force declared such a mortgage as the one in this case to be void as against the rights and interests of any person other than the parties to the instrument.   It did not provide that the interests or rights of such persons must have been acquired in good faith, and we find nothing in the law which discloses the design of the legislature that the language of Section 1538 should, by construction, be so enlarged or expanded for the benefit of the mortgagee.

For the purposes of this case, a subsequent purchaser in good faith may be defined as one who buys without notice of the mortgage, and without intent to defraud creditors or other persons of their demands.   These two conditions must co-exist.   The absence of the one is as fatal as the lack of the other.   When the purchaser is shown to have had notice, bad faith is established; further proof of bad faith can add nothing to the consequence flowing from the fact of notice.   A purchaser must act in good faith or in bad faith; there can be no intermediate ground upon which he may stand.   Now, this

Court held in the *Milburn Case*, cited supra, that a chattel mortgage which did not comply with the requirements of Section 1538 was void as against a subsequent mortgagee with knowledge of the first mortgage. The decision was necessarily based upon the premise that the rights and interests of subsequent purchasers and incumbrancers, although acquired in bad faith, within the foregoing definition, exist and must be enforced as against such prior mortgage; and its inevitable conclusion is that inquiry touching the good faith of the purchaser or incumbrancer with respect to the mortgagee is an effort to elicit immaterial evidence. The general rule being that the purchaser of property with actual notice of the rights thereto of third persons is a purchaser in bad faith, it follows that he must be deemed to have committed or attempted fraud, against which such rights will prevail. But the *Milburn Case* has declared an exception to the rule, or rather, has established the contrary doctrine with respect to the rights and interests of purchasers of chattels who have bought with intent to defraud the mortgagee, whose mortgage did not meet the requirements of Section 1538. Evidence of such intent should not be confounded with the intent; for instance, proof that a purchase was with knowledge and in disregard of an existing mortgage made since July 1, 1895, to secure the payment of a just debt, which was void only as to subsequent purchasers in good faith for value, in the eye of the law as effectively establishes the intent to defraud the mortgagee of his lien, as could proof of any other or different facts showing the like intent. Under the present statute, the fraudulent intent, howsoever proved, is fatal to the purchaser's title, when it meets the lien of the mortgage. Under the provisions of Section 1538, however, as interpreted in the *Milburn Case*, the purchaser's fraudulent intent, by whatsoever evidence it has been proved, is without legal significance; he acquired rights to and interests in the property which are declared to be superior to those of the prior mortgagee.

Section 1538 must be strictly construed, as against the mortgagee. Goodkind, as mortgagee, had a demand, name-

ly, his mortgage, which was valid between him and the mortgagors. It was void, and consequently wholly inoperative, as against the rights and interests of the plaintiffs, who, as purchasers from the mortgagors, owned the property, and whose title could be avoided only by some person with a lien upon or interest in the property which was valid as against such title. So far as the plaintiffs were concerned, there was no mortgage upon the property; hence there was no lien by mortgage valid as against their title. Their interest in the property was the same as it would have been had the mortgage to Goodkind never been made. We have already said that the only lien Goodkind asserted was in virtue of the mortgage, and that his lien must have been valid as against the title of the plaintiffs, in order to afford justification for his seizure of the chattels. There was no such lien, and therefore plaintiffs could not, in contemplation of law, have taken the bill of sale with the intent to defraud Goodkind of the benefit of his mortgage. We are of the opinion that the section did not exclude from its protection rights and interests acquired from the mortgagors by purchasers for a valuable consideration, but with intent to defraud the mortgagee, who had failed to comply with the requirements of Section 1538. In such case there is no lien as against the title of the purchaser, and therefore his intent to defraud the mortgagee of his lien is, as a matter of law, necessarily futile. The plaintiffs could not defraud the defendants of that which the latter did not have as against the former. We are aware that in *Fuller* v. *Paige*, 26 Ill. 358, 79 Am. Dec. 379, upon a somewhat different state of facts, the supreme court of Illinois seems to have reached a conclusion at variance with the one announced in the present case; but, entertaining the views we do in respect of the proper construction of Section 1538, we are unable to follow it, even if it be conceded that the reasoning therein may be applied to the facts here presented.

The special findings are inconsistent with the general verdict, and hence the former control. They do not support the judgment. The conclusion of law to be drawn from them is

that the plaintiffs should recover.    We shall not, however, order the entry of judgment, for the reason that we have no means of knowing what, if any, exceptions were taken by the defendants in the court below.    The only exceptions properly included in a transcript on appeal are those of the appellant.    (*O'Rourke* v. *Schultz*, 23 Mont. 293, 58 Pac. 712.)  In a given case (this is but an illustration) the trial court may have excluded admissible evidence tendered by the respondent, or erred in other ways to his prejudice; the findings of fact or the general verdict may, if allowed to stand, require a judgment for the appellant, although the facts might have been found otherwise had error not intervened. To order judgment for the appellant under such circumstances would work manifest injustice to the respondent.

The order denying a new trial and the judgment are reversed, and the cause is remanded.

*Reversed and remanded.*