EDENFIELD, RESPONDENT, *v.* C. V. SEAL CO., INC., ET AL., APPELLANTS.

(No. 6,250.)

(Submitted June 8, 1928. Decided July 12, 1928.)

[270 Pac. 642.]

*Messrs. Campbell & Carolan* and *Mr. E. E. Fenton,* for Appellants, submitted a brief; *Mr. T. W. Carolan* argued the cause orally.

*Mr. C. L. Harris,* for Respondent, submitted a brief and argued the cause orally.

52

56

58

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The sole assignment of error is that the evidence is insufficient to support the judgment.

At the outset we have in mind the well-known rule that this court will not overturn the findings of the trial court unless the evidence clearly preponderates against them. (*Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71.)

The court's findings to the effect that the corporation was created by Seal, his wife, and his hired man to enable Seal to put his property beyond the reach of his creditors, and that his transfer of his property to the company was without consideration, are fully sustained by the evidence.

"Every transfer of property * * * with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, * * * ." (Sec. 8603, Rev. Codes 1921.)

The court was justified in asserting in its decree that the sale of the property to the company was fraudulent and was made for the purpose of hindering, delaying and

defrauding the creditors of Seal and particularly the plaintiff. That this is so the record fully affirms. Seal, his wife, and Dillon were residents of Montana. S. W. Seal was a resident of Illinois and was never in Montana except several years ago when his son, Clarence V. Seal, was ill. S. W. Seal testified by deposition. He said he was not interested in business with his son. At first, in his testimony, he said he did not know the corporation known as the C. V. Seal Company. He did not know it had been organized but his son had told him about it. He did not know how many shares he had and could not tell what consideration he had given for them. He did not remember that he had any conversation or correspondence with his son about the organization of the company. He said he had furnished his son $1,800, after the son had come to Montana, but this the son had repaid two years after the loan was made. He had never purchased an interest in his son's Montana property—''only what he gave me in the company''; he did not know when he became a stockholder in the company. In December, 1923, the son visited him in Illinois; the son then was not owing him any money and they did not discuss financial matters. He did not know his son was going to organize a corporation; he did not know his son was selling him a half interest in it; he did not know how much stock was issued to him. He then said that the stock was issued to him on ''Clarence V. Seal's schooling,'' but he ''did not know the amount.'' Such qualifications as he made with respect to the foregoing testimony did not tend to clarify it nor materially to weaken its force against the defendants.

We refrain from discussing in detail the testimony of Mary Seal, the wife. It is sufficient to say that the court and the jury, upon considering it, were warranted in making the finding that there was not any bona fide sale made by Seal to his wife of any interest in the property prior to the incorporation of the company; and that the court was justified in finding that she aided and abetted her husband in his attempts

to place his property beyond the reach of his creditors. Her testimony, as it appears in the record, would warrant that conclusion. When we take into consideration the fact that the jury and the court had the advantage of seeing her upon the stand, of observing her demeanor, of hearing her voice and seeing her countenance while testifying, even greater weight is to be given to their findings.

This court and other courts have said on many occasions ▮ that a court cannot scrutinize too closely the relation between husband and wife with respect to business dealings between them where creditors are concerned. (*Keller* v. *Flanagan*, 66 Mont. 144, 158, 213 Pac. 222, 225.) The marital relation is often a convenient means for the perpetration of a fraud, and when claims of indebtedness are made between husband and wife, they must be subjected to the most searching examination, if not indeed suspicion. (*Lambrecht* v. *Patten*, 15 Mont. 260, 38 Pac. 1063; *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491.) Of course the fact that such relationship exists between a grantor and a grantee is not of itself a badge of fraud. (*Hale* v. *Belgrade Co.*, 75 Mont. 99, 242 Pac. 425; *Harrison* v. *Riddell*, 64 Mont. 466, 210 Pac. 460.)

The defendants argue that because plaintiff alleged that the ▮ sale of the property was not accompanied by a delivery thereof to the purchaser, nor followed by an actual and continued change of possession, but remained in the possession and under the control of Seal, the plaintiff had an adequate remedy at law and is precluded from relief in equity. But these allegations must be read in connection with other allegations in the complaint, and, as we have seen, the plaintiff also alleged that Seal sold all his property to the company, and that the company claims to be the owner thereof. And the company vigorously asserts that it does own all of Seal's property—or so much thereof as remains. Let it be conceded that plaintiff's complaint is inconsistent in some respects. The defendants did not attack it by motion or special demurrer. The rule is that if a complaint states a cause of

action upon any theory it is not vulnerable to a general demurrer, nor subject to attack after judgment upon technical grounds. (*Hamilton* v. *Hamilton*, 51 Mont. 509, 154 Pac. 717; *Anderson* v. *Border*, 75 Mont. 516, 244 Pac. 494; *Hodson* v. *O'Keeffe*, 71 Mont. 322, 229 Pac. 722.) A further answer to the particular objection is that it does not lie in the mouths of defendants to say, in view of their pleading, that Seal did not sell and deliver the property to the company.

The allegations of the complaint may be reconciled upon the theory that, while Seal in form did sell and deliver the property to the corporation, which he himself created, the transaction was fraudulent, a mere sham, to enable him to escape the payment of his debts. Nevertheless the company had title to the property. It made income tax returns, and in all outward respects functioned as a corporation. It wore the habiliments and held itself out to the world as a corporation. It was the coat which Seal wore to conceal his assets that he might hinder, delay and defraud his creditors.

The same may be said of the court's findings on this feature of the case. While the court found that there had not been any delivery, nor any actual and continued change of possession, of the property, and Seal continued in the possession thereof, this was upon the theory that the corporation was a mere sham of Seal's creation; but the court found that there had been a sale and transfer, which it declared fraudulent; and the court found that the company had sold property transferred to it by Seal, for which it received money "and now has the possession and control of the same"; and the court specifically decreed "that said sale and transfer be and the same is hereby set aside."

A creditor can avoid the act or obligation of his debtor for fraud where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation. (Sec. 8605, Rev. Codes 1921.) Manifestly, in view of what precedes, the court was justified in declaring that the sale and transfer of the property to the

company, and the company's attitude with respect thereto, obstructed the enforcement by legal process of plaintiff's right to take the property. This is too clear for argument. Efforts to satisfy plaintiff's judgment by means of writs of execution had failed. Supplemental proceedings in aid of the executions, in view of the return made by Mary Seal, would have been unavailing. (*Johnson* v. *Lundeen*, 61 Mont. 145, 200 Pac. 451.)

Defendants assert that plaintiff cannot recover for the reason that he did not have a specific lien upon, nor show a special interest in, the property when he commenced this action, and *Wilson* v. *Harris*, 21 Mont. 374, 54 Pac. 46, and *Raymond* v. *Blancgrass*, 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648, are cited. But these cases were distinguished in *Wheeler & Motter Merc. Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665, in which it is pointed out that the statute under which they were decided had been amended, permitting a different procedure. We shall not retrace that ground. It is sufficient to say that the holding in the *Wheeler & Motter Case* has not been questioned by any subsequent decision of this court, and we think it correct. The course approved in that case was followed by the plaintiff in this case. Here the plaintiff got judgment. While he was getting it, and after his debtor had been served with summons, the debtor caused a corporation to be formed—a corporation which was his *alter ego*—to which he transferred his property for the purpose of putting it beyond the reach of his creditors and particularly the plaintiff. The plaintiff got out executions upon the judgment. Pursuant to one the sheriff of Treasure county attached (garnisheed) all the right, title and interest of the debtor Seal in and to property in the possession of or under the control of the company and notified its officers—all its officers—"not to transfer or remove said property or any part thereof until duly released according to law." The company through Mary Seal answered that the company did not owe Seal anything, and that it had no property in its

possession or under its control belonging to Seal. So did the garnishee in the *Wheeler & Motter Case.* The plaintiff then instituted this action and clearly is entitled to maintain it. (*Wheeler & Motter Mercantile Co.* v. *Moon,* supra; and see *Harrison* v. *Riddell,* supra.) A contrary ruling in this case would open the door to innumerable schemes similar to that employed by the defendant Seal, whereby debtors would be enabled to avoid the payment of their just debts.

The court found (finding of fact No. 24) that the Great Western Sugar Company has deposited with the clerk of the district court $2,082.33 due the C. V. Seal Company under contract for the growing of sugar-beets, which the plaintiff is entitled to have applied on his judgment. There is not any evidence in the record to sustain this finding and it must be set aside, and the decree modified accordingly. If, however, the finding states the fact, upon application of the plaintiff the court may enter the necessary order to subject any money within its power to the satisfaction of plaintiff's judgment.

The cause is remanded to the district court of Treasure county with direction to modify its decree by eliminating therefrom finding of fact No. 24. When so modified the judgment will stand affirmed. The plaintiff, respondent here, shall recover his costs upon this appeal.

The opinion in this cause, promulgated April 26, 1928, upon which a rehearing was granted, is ordered withdrawn from the files and this opinion substituted in lieu thereof.

ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

MR. JUSTICE MYERS: I dissent. In my opinion, plaintiff had a plain, speedy, adequate and complete remedy at law. Until he had exhausted that he had no standing in a court of equity (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Westheimer* v. *Goodkind,* 24 Mont. 90, 60 Pac. 813; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 116), and, in my opinion, he did not do it. Plaintiff alleged and the trial court

found there was no consideration for the alleged sale of Seal's property to the Seal Company and that there was no delivery or change of possession thereof but that all thereof, at all times, was owned by Seal and remained in his possession and under his control, as the owner thereof; and there is substantial evidence to support the findings. Those basic findings being supported and accepted as true, in my opinion it is immaterial what other findings were made. Under those circumstances, plaintiff's remedy at law was to ignore the alleged fraudulent sale and to have an officer, by his direction, seize the property on writ of attachment or execution writ and sell it, if taken on execution, or hold it, pending judgment, if taken by attachment. There was no excuse for not doing so. (*Wilson* v. *Harris,* supra; *Westheimer* v. *Goodkind,* supra; *Wyman* v. *Jensen,* supra.) There was no obstruction to the enforcement, by legal process, of his right to take the property. "It does not appear that the property was concealed or that it was incapable of manual delivery." (*Wilson* v. *Harris,* supra.) As pointed out in *Wilson* v. *Harris,* supra, if any property seized be claimed by a third party, the creditor may keep in force the seizure by furnishing an indemnifying bond, if taken by attachment (sec. 9273, Rev. Codes, 1921), and, if upon levy under execution, action may be taken against such party. (Sec. 9460, Rev. Codes, 1921.) If unable to give the indemnifying bond, if demanded, which is not pleaded, he might at least go that far and show he had gone so far as he could and thus exhaust his law remedy to the extent of his ability. None of those things did plaintiff do.

According to the allegations and the findings above referred to, supported by evidence, for months after rendition of plaintiff's judgment and for weeks after issuance of execution writs all of the property was in the possession and under the control of Seal, as owner, and I see no justification for plaintiff in not having all of the property attached or levied upon, instead of foregoing that opportunity and seeking the

aid of equity. As to speed, the former course would have been speedier than the one herein pursued. That it was a plain remedy is shown by the statutes and the decisions of this court I have cited. Of course, he was not required to pursue that remedy unless it was as adequate and complete, effective and efficient, as a suit in equity (*Bullard* v. *Zimmerman,* 82 Mont. 434, 268 Pac. 512), but to my mind, it is apparent it was as adequate and complete, effective and efficient, as this proceeding, and more so. If it may be said it might have resulted in litigation with another party claiming the property, the answer is that it could have resulted in no more than has this proceeding. (*Wilson* v. *Harris,* supra.) It was "so proximately certain as to be adequate to right the wrong complained of." (*Gray* v. *Citizens' Gas Co.,* 206 Pa. 303, 55 Atl. 988.)

"The extraordinary and peculiar powers of equity cannot be successfully invoked by those who have failed to first avail of whatever procedure the law affords." (*Wilson* v. *Harris,* supra.) "Before coming into equity, he must exhaust his legal remedy." (*Wyman* v. *Jensen,* supra.) "After the exhaustion of legal remedies, the extraordinary jurisdiction of chancery may be invoked." (*Westheimer* v. *Goodkind,* supra.) In *Wilson* v. *Harris,* supra, this court speaks deprecatingly of the "strong temptation" to creditors aggrieved by transfers of property by debtors, which arouse suspicion, to invoke the powers of equity, before exhausting their remedies at law. Of the appeal to equity, the opinion says: "The proceeding is not very expensive, involves no great responsibility or risk and is not infrequently resorted to when unnecessary." It says, further, appeals by creditors to equity should not be encouraged unless a case is "strictly within the well established principles which determine the creditor's right to resort to equity." It is not every case of fraudulent transfer of property in which equity will interfere. A creditor, to avail himself of equity powers, must first do certain things,

if possible, or show he could not do them, and put himself in a position to invoke equity.

The majority opinion refers to the fact that the answer denies the allegations of the complaint hereinbefore mentioned. It does, but the trial court found that the allegations were true. Plaintiff made them and, in my opinion, he is bound by them and upon appeal may not be allowed to repudiate them and take an opposite and inconsistent stand. (*Waite* v. *Shoemaker Co.*, 50 Mont. 264, 146 Pac. 736; *Columbus State Bank* v. *Erb*, 50 Mont. 442, 147 Pac. 617.) A pleader is presumed to have made his pleadings as strong in his favor as he could and it must be so taken. (*Montana Amusement Sec. Co.* v. *Goldwyn Dist. Corp.*, 56 Mont. 215, 182 Pac. 119.) It devolved upon plaintiff to make out his case and to make it out in accordance with his allegations. (*Marcellus* v. *Wright*, 65 Mont. 580, 212 Pac. 299.) Upon appeal, counsel for plaintiff urge that this court should affirm the judgment "irrespective of the allegations of the complaint" but I do not believe that proper. (*Waite* v. *Shoemaker Co.*, supra.)

Counsel for plaintiff cite and rely upon the cases of *Wheeler & Motter Merc. Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665, and *Harrison* v. *Riddell*, 64 Mont. 466, 210 Pac. 460; but I do not believe them applicable or inconsistent with the cases I have cited. In the *Moon Case*, decided on demurrer, it was alleged that the goods sold were transferred and that the purchaser took immediate possession, the exact opposite of the allegations, proof and findings in this case. Hence, it was held in the *Moon Case* that the purchaser was subject to garnishment and that it created a lien; not so here. In the *Riddell Case*, there was no allegation of nondelivery or no change of possession, as here, but the opinion shows that there was a "transfer of the business and property to the corporation." Moreover, in the *Riddell Case* the plaintiff was not satisfied with issuance of execution and return thereof *nulla bona;* he resorted to supplemental proceedings and failing

by them to discover any property subject to his judgment he then resorted to equity and his right to do so was not questioned or an issue in the case. In the case at bar, plaintiff did not do that. He was content to rest upon execution returns practically *nulla bona* and then turn to equity, notwithstanding he swore in his verified complaint that there had never been any delivery or change of possession of the debtor's personal property, capable of manual delivery, but that, at all times, it was in the possession of the debtor, as the owner thereof, and notwithstanding he offered proof to support the charge and the trial court found it to be true. This is quite a different situation, in my opinion, from that disclosed by either of the two cases last mentioned. Had plaintiff even resorted to supplemental proceedings as was done in the *Riddell Case*, and apparently uncovered nothing, he would have come much nearer to putting himself in a position in which he could turn, justifiably, to equity for aid.

So far as the record in this case may disclose a disposition or any attempt to defraud, I have no sympathy with any such disposition or attempt but, upon plaintiff's theory of the case, I am convinced from the allegations of the complaint, the evidence and the findings of the trial court that there was no transfer of property to set aside and that there was at all times in Seal's possession personal property subject to the judgment and subject to manual seizure, which plaintiff easily could have had attached or levied upon, and that he had therein a plain, speedy and adequate remedy at law, proximately certain, which he should have used before resorting to equity and, failing so to do, he had no right to resort to equity. Indeed, as said in *Wilson* v. *Harris,* supra, until such remedy be used and exhausted, equity has no jurisdiction, for, as there said "equity may act in those matters only in which no remedy is afforded in the ordinary course of law or in which the remedy at law is deficient."

Moreover, so far as the record discloses, much of the property may still be in Seal's possession and subject to execution levy."

Rehearing denied October 1, 1928.