FIRST NATIONAL BANK OF GLENDIVE, RESPONDENT, *v.* CONNER, APPELLANT.

(No. 6,454.)

(Submitted May 23, 1929. Decided June 11, 1929.)

[278 Pac. 143.]

Cause submitted on briefs of Counsel.

*Mr. George W. Farr,* for Appellant.

*Messrs Hildebrand & Warren,* for Respondent, Merchants' National Bank of Glendive.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment in favor of Merchants' National Bank of Glendive, defendant and cross-complainant, and against defendant and cross-complainant Chloa Conner.

In January, 1927, the plaintiff, First National Bank of Glendive, commenced an action by the filing of a complaint,

wherein it is alleged that the plaintiff has in its possession the sum of $1,146.01 to which it makes no claim; that the money was deposited in the bank in February, 1926, pursuant to an order of court, made in an action wherein one Frank A. Johnson was plaintiff, and defendant Jesse Conner was defendant; that defendant Chloa Conner claims to be the owner of the money and has made demand upon the bank for its payment to her; that defendant A. H. Helland, as sheriff of Dawson county, has made demand upon the bank for the money by virtue of the service upon the bank of a writ of execution in an action in which the defendant Merchants' National Bank of Glendive is judgment creditor, and defendant Jesse Conner is a judgment debtor; and that the latter bank claims the money under and by virtue of the judgment and execution. It prays that each of the defendants be required to interplead concerning such claims to the money; that some person be authorized to receive the money and the plaintiff be relieved from all liability; and that, pending a determination of the rights of the parties, they each be enjoined from bringing action against this plaintiff on their respective claims.

Each of the defendants answered the complaint. The defendant bank appended to its answer a cross-complaint, setting forth its claim to the money as against the plaintiff, merely claiming that the money belonged to its judgment debtor, Jesse Conner, and had been legally garnished in the hands of the bank, and that the bank had refused to deliver the money to the sheriff in accordance with its return made to that officer.

Chloa Conner filed a cross-complaint against the plaintiff bank, the defendant bank, and the sheriff, in which she alleged that at the time the money was deposited in the plaintiff bank, and at all times since, it belonged to her as the proceeds of the sale of certain hogs owned by her; that at the time of the shipment of the hogs by her an action was pending wherein Frank A. Johnson, as plaintiff, claimed that the hogs were owned by the partnership of plaintiff and Jesse Conner, defendant; and that therein the court had issued a restraining

order preventing defendant Jesse Conner from disposing of them, which order was thereafter modified to permit the sale on deposit of the proceeds in the plaintiff bank in the name of the defendant Jesse Conner, but without prejudice to the rights of defendant Chloa Conner to assert her claim to the hogs or the proceeds; and that the money was so deposited, but the title thereto has always been, and now is, in this cross-complainant.

Answering this cross-complaint, the defendant bank denied that the defendant Chloa Conner had any interest in or claim to the hogs or the proceeds thereof, and alleged that Jesse Conner was the sole owner of the hogs at the time of sale and of the proceeds at the time they were deposited in the plaintiff bank, and further alleged that "prior to the commencement of this action and at the time when the said Jesse Conner was indebted to * * * " this defendant bank upon an indebtedness represented by the judgment obtained in January, 1926, "and at a time when the said Jesse Conner was insolvent, and for the sole purpose of hindering, delaying, cheating, and defrauding the creditors of the said Jesse Conner and particularly this answering defendant, * * * and without any legal consideration whatsoever, the said Jesse Conner attempted to convey certain personal property to the said Chloa Conner, * * * wife of * * * Jesse Conner, * * * by means of bills of sales * * * accepted by the said Chola Conner for the purpose [above described], and that no title to said personal property passed by virtue of said pretended conveyances and bills of sale; that Jesse Conner was still the sole owner of the property at the time of the sales of a part thereof and of the proceeds of such sales, levied upon, and that said bills of sale and conveyances so made by the said Jesse Conner * * * and accepted by the said Chloa Conner for the sole purpose of cheating, hindering, delaying and defrauding creditors and particularly this answering defendant, are wholly fraudulent and void and of no effect whatsoever."

234

The issues tendered by this answer were denied by reply filed by cross-complainant Chloa Conner. The case was tried to the court, a jury trial being expressly waived. On the pleadings and the evidence adduced in support thereof the court made findings to the effect that the cross-complainant had no right, title, or interest in the moneys on deposit in the plaintiff bank, and that her claims thereto are invalid and untenable; that the transfer of the property sold, and from which the money on deposit was acquired, was fraudulent and void as against creditors whom it was sought thereby to cheat and defraud. As conclusions of law the court declared that Chloa Conner was entitled to take nothing under her cross-complaint and it should be dismissed; and that the defendant bank was entitled to recover the amount on deposit, less the plaintiff bank's costs. Judgment was entered accordingly.

From this judgment, defendant Chloa Conner has appealed, specifying error upon the making of the findings of fact and conclusions of law above outlined and the entry of judgment. Under these specifications of error the cross-complainant Chloa Conner contends, first, that the pleadings on behalf of the defendant bank are insufficient to entitle it to any relief as against her; and, second, that the undisputed and uncontradicted evidence shows that it is not entitled to the money in question, as against her.

Counsel for Chloa Conner asserts that the answer to her cross-complaint does not seek to set aside any sale or conveyance, nor seek to invoke the aid of the equity side of the court; that it does not bring the answering defendant in privity with the property in question by showing that the defendant had a lien upon it, nor does it allege that Jesse Conner had no other property out of which that defendant's judgment could be satisfied.

Conceding that the answer is open to criticism in certain respects and might not have withstood an attack by demurrer or objection to the introduction of testimony, it must be noted that no such attack was made upon it, and the force of counsel's argument is greatly lessened by this fact. While

the objection that such a pleading as filed by the bank is insufficient may be raised for the first time on appeal (*Hand* v. *Heslet,* 81 Mont. 68, 261 Pac. 609), such objection is regarded with disfavor, as an attempt to put a trial court in error on a matter not submitted to it; when made for the first time in this court, every reasonable deduction will be drawn from the pleading in order to uphold it (*Gilna* v. *Barker,* 78 Mont. 357, 254 Pac. 174), and whatever is necessarily implied in, or is reasonably to be inferred from, an allegation will be taken as directly averred. (*Grasswick* v. *Miller,* 82 Mont. 364, 267 Pac. 299; *Woodward* v. *Melton,* 58 Mont. 594, 194 Pac. 154; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601.)

Furthermore, even though a pleading is insufficient, where evidence is admitted without objection although not warranted by the pleading, the pleading will be deemed amended to conform to the proof. (*Donich* v. *Johnson,* 77 Mont. 229, 250 Pac. 963; *Parsons* v. *Rice,* 81 Mont. 509, 264 Pac. 396; *Davis* v. *Claxton,* 82 Mont. 574, 268 Pac. 787.) We must consider the objections urged with these rules in mind.

The criticism that the answer does not seek a cancellation of the transfer alleged to be fraudulent and void is leveled at the prayer for relief, which is no part of the pleading (*Blackwelder* v. *Fergus Motor Co.,* 80 Mont. 374, 260 Pac. 734; *Murray* v. *Creese,* 80 Mont. 453, 260 Pac. 1051), rather than at the allegations contained in the answer.

As in the *Blackwelder Case* the plaintiff prayed only for injunctive relief, yet it was "reasonably inferable" that the plaintiff sought to establish the fact of payment and to have a note declared satisfied, and such allegation and proof were necessary in order that the court might grant the relief prayed for, and, as the proof was admitted without objection, the complaint was deemed amended to conform thereto; so here, while the answer does not pray that the bills of sale or conveyance in question be canceled, it alleges that they were fraudulent and void by reason of facts stated, and proof of all of the facts, on which the court decreed the cancellation of the instruments, was admitted without objection, which

proof included a statement of Jesse Conner himself showing that he had no other property out of which the bank's judgment could be satisfied; in these particulars the answer will be deemed amended by inserting proper allegations and demand for relief in order that the court may be considered as in position to grant the relief for which the defendant bank prayed in its answer.

As to bringing itself in privity with the property, the answering defendant alleged a lien by virtue of the levy made upon the proceeds from the sale of the property.

There is abundant authority for the proposition that a complaining creditor has the right to follow the fund or proceeds of a fraudulent sale or conveyance either as money or into any property in which it may have been invested, so far as it can be traced, and into the possession of any person not a bona fide holder thereof. (1 Moore on Fraudulent Conveyances, at pages 171, 172, and cases cited.)

The lien which must exist before a creditor is permitted to attack a sale as fraudulent need not exist at the time of the fraudulent sale, but may be initiated by levy of attachment or execution, when "the sale becomes inoperative as to him, not only from the date when the lien was imposed, but *ab initio.*" (*Westheimer* v. *Goodkind*, 24 Mont. 90, 60 Pac. 813; *Bowen* v. *First State Bank*, 69 Mont. 223, 221 Pac. 527.)

Counsel for the cross-complainant relies upon *Wilson* v. *Harris*, 21 Mont. 374, 54 Pac. 46; but the opinion in that case is not applicable under our present statutory provision on the subject of service of a writ of attachment or execution. (*Wheeler & Motter Mercantile Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665; *Edenfield* v. *C. V. Seal Co.*, 83 Mont. 49, 270 Pac. 642.)

With reference to the assertion that the defendant bank is not entitled to prevail because it did not seek to invoke the aid of a court of equity, the rule is that, where a stakeholder is unwilling to assume the responsibility of determining the ownership of a fund in his hands, he may invoke the equitable aid of the court for the determination of the matter,

under section 9087, Revised Codes of 1921, and, the court having acquired jurisdiction over all parties claiming the fund or any part thereof, will determine and enforce the rights of the several parties made defendants in the interpleader action. (*Missoula Trust & Savings Bank* v. *Iman & Son,* 50 Mont. 355, 146 Pac. 941; *Anderson* v. *Red Metal Mining Co.,* 36 Mont. 312, 93 Pac. 44; *Davis* v. *Claxton,* above.)

The answer of the defendant bank is sufficient with respect to the belated attack made upon it.

2. The evidence, upon which the court made the findings questioned, tends to prove that Jesse Conner became indebted to the defendant bank in 1918 in a sum in excess of $3,000 and thereafter became hopelessly insolvent, lost all of his real estate and much of his personal property on foreclosure of mortgages, and thereafter transferred his remaining personal property to his son-in-law, Johnson, caused Johnson to transfer it to Mrs. Johnson, and then had Mrs. Johnson execute mortgages on the property for his benefit and thereafter transfer the property back to him, no consideration passing on any of the transfers, and Conner exercising dominion and control over the property at all times. In the meantime Conner's wife, Chloa Conner, was declared a bankrupt, and, having repossessed himself of the paper title to the property, Conner transferred it to his wife but still maintained control over the property in operating the Conner ranch, while Mrs. Conner resided principally in town; that this juggling of the title to the personal property was indulged in so that Conner's creditors could not "tie it up." A hog buyer testified that when he called upon Mrs. Conner she said, "Mr. Conner has some hogs," and later when he purchased hogs from Conner in Mrs. Conner's presence, nothing was said as to Mrs. Conner owning them.

Johnson testified that, before the property was transferred to him, Conner told him that he would transfer the property to Johnson and they would go "fifty-fifty" on it; his wife would go through bankruptcy and a short time thereafter he would do the same and then Johnson could transfer the

Conner interest in the property to them. This agreement was the basis of Johnson's suit against Conner, in which the modified order of the court permitted Conner to sell the hogs, from which the proceeds were deposited in the plaintiff bank. The hogs were sold by Conner in the name of Chloa Conner, and the remittance was made by the purchaser to the plaintiff bank to the credit of Chloa Conner, but, under stipulation in *Johnson* v. *Conner,* she transferred the amount on deposit by check made payable to Jesse Conner, and the deposit stood in his name at the time the sheriff levied upon it as his property. The records shows that, on a levy of the defendant bank's execution against other property of Jesse Conner, the sheriff was able to realize but $114, and Conner's own testimony is to the effect that he has no other property out of which the judgment could be satisfied. Being pressed on cross-examination as to why he transferred his personal property to his wife, Conner testified: "Simply to have something to run on so that we could do business; * * * when I gave that bill of sale we had quite a bit of debts to pay—store bills, hardware bills—and I figured that if they kept making such extra expense as this, we couldn't pay them bills." He testified that he sold a half interest in the property to Johnson, retaining a half interest at the time, but that Johnson never paid for the interest transferred and he thereafter took it back and thereafter transferred the whole to his wife in consideration of her agreement to pay certain debts as to which the evidence is rather vague and might properly be disregarded by the court, in view of other evidence tending to show that the transfer was made solely for the purpose of preventing creditors, and particularly the defendant bank, from levying upon the property in satisfaction of just debts.

It is true that one has dominion over his property and may make such disposition of it as he sees fit; he may sell it for less than it is worth, or give it away; and there is no objection to a husband giving his property to his wife; he is not deprived of this right merely by reason of the fact that he is indebted or even insolvent (*Security State Bank* v. *Mc-*

*Intyre*, 71 Mont. 186, 228 Pac. 618; *Gates* v. *Powell*, 77 Mont. 554, 252 Pac. 377) ; but fraud vitiates all things, and, where the rights of creditors are affected and a transfer is attached as fraudulent, insolvency of the grantor and gross inadequacy of consideration are considered "badges of fraud," and while the relationship of husband and wife, or other near relationship is not a badge of fraud, transactions between near relations, in such cases, because of the opportunity for fraud, are subject to the most rigid ,scrutiny and the fact of such relationship may be considered, with other evidence, as reflecting the intention with which the transfer was made (*Edenfield* v. *C. V. Seal Co.*, above; *Ferrell* v. *Elling*, 84 Mont. 384, 276 Pac. 432; *Hart-Parr Co.* v. *Schafer*, 73 Mont. 429, 236 Pac. 675; *Security State Bank* v. *McIntyre*, above; *Harrison* v. *Riddell*, 64 Mont. 466, 210 Pac. 460).

The findings that the transfer was made for the purpose of defrauding Conner's creditors, and particularly the defendant bank, are clearly supported by the preponderance of the evidence and cannot be overturned. (*Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71; *Davis* v. *Claxton*, above; *Edenfield* v. *C. V. Seal Co.*, above.)

Section 8603, Revised Codes of 1921, declares that "every transfer of property * * * with intent to delay or defraud any creditor * * * is void," but "a creditor can avoid the act or obligation of his debtor for fraud only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation." (Sec. 8605, Rev. Codes 1921.) The defendant bank brought itself within the provisions of these statutes, but counsel for Chloa Conner contends that it was also necessary for the creditor to prove that credit was extended to the husband upon the strength of his apparent ownership of the property, which proof was not made. In support of this assertion, counsel relies upon *Webster* v. *Sherman*, 33 Mont. 448, 84 Pac. 878. This authority is not in point, however, as therein no fraud was alleged or proved, and the question as to extending credit as a basis of recovery arose on the contention that

the property in question should be subjected to the satisfaction of plaintiff's debt by reason of the alleged representation by the husband to the creditor, at the time he was accorded credit, that the property belonged to him, although he had theretofore transferred it to his wife.

The mere fact that it is not shown that the credit was extended on the strength of the debtor's ownership of the property in question does not affect the creditor's right to attack the transfer. (*Ferrell* v. *Elling,* above.) In *Pincus* v. *Reynolds,* 19 Mont. 564, 49 Pac. 145, creditors extended credit after a fraudulent transfer was made, without knowing the fraudulent character of the transaction by which the debtor placed his property out of his hands; on learning the facts they commenced action to subject the property involved to the satisfaction of their debt. This court said: "As soon as they learned this, they had a right to attack" the fraudulent transfer, whether their demands accrued before or after the sale.

The evidence as a whole warrants the findings of the court and the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.